**STATE of Missouri, Respondent,**

v.

**Eugene NELSON, Appellant.**

**No. 53038.**

Supreme Court of Missouri,

Division No. 2.

May 13, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Ben Ely, Jr., Sp. Asst. Atty. Gen., St. Louis, for respondent.

Paul L. Dobberstein, Jr., St. Louis, for appellant.

STOCKARD, Commissioner.

Defendant was charged under the habitual criminal act with felonious assault with intent to kill with malice aforethought in violation of § 559.180, RSMo, V.A.M.S. The fact of two prior convictions and imprisonment was stipulated, and based thereon the trial court made the necessary findings relative thereto. Defendant was found guilty by the jury, and was sentenced by the court to imprisonment for a term of eight years.

Defendant asserts that the trial court erred in denying his motion for judgment of acquittal, and contends that the evidence "was not legally sufficient to induce a belief beyond a reasonable doubt" of his guilt. From defendant's argument in support of this contention it is apparent that the challenge is directed primarily to the issue of identification of defendant as the assailant.

A jury reasonably could find from the evidence the following facts. About eight o'clock of the evening of July 29, 1966, Donald Coleman and Clinton Fraser went to Hubbard's Pool Hall at 817 North Leffingwell Street in the City of St. Louis. Coleman spoke to Robert Pulliam who was playing pool, and then walked to the back of the pool hall where defendant was playing pool alone. Coleman did not know defendant, and had not seen him before, but he asked defendant to shoot a game of pool. An argument resulted concerning the

amount to be wagered on the outcome of the game. There was considerable cursing and name calling, and both participants "pulled knives," but no blows were struck. The owner of the pool hall, with the assistance of a shotgun, broke up the argument, and he told defendant to leave. As defendant left, "something happened" at the first table, and apparently defendant's friends helped or caused him to leave the pool hall. Coleman watched a pool game being played for five or ten minutes, and he then saw defendant standing at the door but on the outside walk. The screen door was open "just enough to get half his face in." Defendant then "slung the door open and started shooting." Coleman was shot in the stomach and in each leg. Coleman testified that he did not see anyone in the doorway but defendant.

The following day at the hospital Coleman identified defendant as the person who shot him. At the trial Coleman, Pulliam and Fraser positively identified defendant as the person with whom Coleman had the argument. Pulliam was not present at the time of the shooting, but Coleman and Fraser both testified that defendant was the person who returned to the door and fired the shots.

Defendant testified and denied that he was in the pool hall on the evening of July 29, 1966 when the shooting took place, and he asserted that at the time he was working as a delivery man for a meat company. He testified that he rode from work with Carl Chapple, the manager of his employer, and went to the home of Chapple's mother, and the two then walked to Hubbard's Pool Hall where they had previously seen a commotion. They then learned that someone had been shot, and after awhile Chapple took defendant home. Chapple testified substantially to the same facts as did defendant.

Defendant argues that the testimony of identification by Coleman and Fraser "is in direct conflict with that of Detectives Oehlert and Worsham." These two officers were in a police automobile when they heard three shots at Hubbard's Pool Hall.

They also saw a group of men, approximately five, looking into the pool hall, or as Detective Worsham said, "standing in front of the pool hall apparently looking through the open door." When the police officers approached, the men ran. Defendant says, "If Detectives Oehlert and Worsham saw the group of men looking into the doorway of the pool hall, why didn't Donald Coleman and Clinton Fraser also see at least some of these men?" He concludes that because they did not "this evidence is not sufficient to sustain a conviction."

■ We note that Fraser did not testify that he did not see other persons at the door. He was not asked. While the testimony of the police officers might affect the weight of the testimony of Coleman and Fraser concerning identification, it does not affect the sufficiency. State v. Williams, Mo., 376 S.W.2d 133. This point is without merit.

Defendant next challenges Instruction 3 because it "allowed the jury to make a finding of guilty if the jury merely found that the defendant was present at the pool hall at the time Donald Coleman was assaulted."

Instruction 3 pertained to defendant's alibi. It stated that if the jury found that Coleman was assaulted by means of a dangerous and deadly weapon, then "unless you further find and believe * * * beyond a reasonable doubt, that the defendant, Eugene Nelson, was present at the time Donald Coleman was assaulted, then you will find the defendant not guilty."

■ Defendant's argument is that "the converse of this instruction would direct the jury to convict the defendant if they found beyond a reasonable doubt that the defendant was present at the time Donald Coleman was assaulted," and no finding that defendant actually committed the assault would be necessary. The immediate answer is that no such converse instruction was given. Also, the instructions are to be

read together, and a verdict of guilty was authorized only if the jury found beyond a reasonable doubt the facts submitted in Instruction 1, which included a finding that defendant "did make an assault upon Donald Coleman, with a pistol * * * [and] did shoot at, against and upon the said Donald Coleman * * *." Instructions submitting the defense of alibi usually refer to "a reasonable doubt as to whether the defendant was present when the crime was committed." State v. Knicker, Mo., 366 S.W.2d 400, 404; State v. Howe, Mo., 343 S.W.2d 73, 75. Here, Instruction 3 stated the matter affirmatively, and required the jury to find beyond a reasonable doubt that defendant was present or find him not guilty. The instruction was not erroneous.

Defendant's remaining point is that the trial court erred "in giving an additional instruction during the jury's deliberations relative to agreeing upon a verdict after the inquiry elicited the information that the jury was unevenly divided."

At 6:00 o'clock, after the jury had been deliberating approximately three and one-half hours, the jury returned to the courtroom, and in answer to an inquiry by the court following an admonition by the court that did not want to know "how you stand as to acquittal or conviction" but "merely numbers," the foreman replied "eleven to one." The court then gave Instruction 8 which told the jury, among other things, of the desirability of it reaching a verdict, but that no juror should ever agree to a verdict that violates the instructions of the court nor find as a fact that which under the evidence and his conscience he believes to be untrue. Thereafter, the jury returned a verdict of guilty. In defendant's argument under this point, he asserts that "the inquiry and subsequent instruction [was] im-

proper * * * [and] coerced the jury into reaching a verdict."

■ Defendant relies primarily on five federal cases. Admittedly in the federal courts an inquiry by the court as to the numerical standing of a jury has been held to be error. Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. However, this rule for procedure in the federal courts does not apply in the courts of this state. State v. Baker, Mo., 293 S.W.2d 900, 905. The rule in this state is "that such an inquiry is not coercive per se but that it must be determined from the record of what is said and done at the time whether or not there is any indication of coercion." State v. Baker, supra. From our consideration of what was said and done in this case, we find no coercion. See the annotation on coercion of a jury by this procedure, 85 A.L.R. 1420, 1450, and the general rules set forth in 53 Am.Jur. Trial, §§ 955–958. As was stated in State v. Roberts, Mo., 272 S.W.2d 190, the trial judge "may detail to the jury the ills attendant on a disagreement." See also State v. Stegall, Mo., 327 S.W.2d 900, 902. There is no merit to this contention.

We have examined the record and find the information is sufficient, the verdict and judgment is in proper form, the punishment imposed is within authorized limits, and allocution was granted.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.