Edward Lee **JOYNER**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–16217.

Court of Criminal Appeals of Oklahoma.

April 21, 1971.

John B. Doolin of Newcombe, Redman & Doolin, Lawton, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff Hartmann, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Edward Lee Joyner, hereinafter referred to as "defendant," was charged, tried and convicted in the District Court of Comanche County of the offense of Murder, his punishment was fixed at life imprisonment and from said Judgment and Sentence, a timely appeal has been perfected to this Court.

Because of the propositions raised by the defendant it is not necessary to recite a detailed statement of facts. Briefly stated several witnesses placed the defendant near the scene of the crime and that he had access to a pistol. The co-defendant, Billy Joe Foster, testified that the defendant said to him in the bar, "let's get somebody." Foster denied saying he didn't do things like that. He left the bar to go home and defendant followed. He observed a white soldier walking down the street and the defendant stopped and engaged the soldier in conversation. He next heard the soldier holler "help" wherein he ran back and the soldier was on the ground with the defendant standing over him with a gun. The defendant told Foster to get the soldier's wallet which he obeyed. Foster told the defendant to put the gun up and started running. He heard a shot and saw the soldier running away from the defendant. He told the defendant not to shoot any more and heard four more shots as the soldier continued to run. Another witness testified that the defendant had also approached him in the bar and said "let's get somebody man." The soldier died of the three gun shot wounds in the back.

The defendant called several witnesses who testified that other persons had access to the gun that evening. The defendant testified that he did not shoot the soldier or have any part in the slaying.

The first proposition asserts that the trial court erred in inquiring of the jury how they stood numerically. The record reflects that the jury retired to the jury room at 4:45 P.M. to begin deliberations. At 2:24 A.M. the jury returned to the courtroom wherein the following transpired:

(OUT OF HEARING OF JURY)

"MR. DOOLIN: Let the record show that court appointed attorney requested the Judge to inquire numerically how they stand and not reveal any other information but purely a numerical designation of their division, if any, in which he concurs.

"MR. CALLICOTT: As long as no other questions are asked and no request that they be either discharged or anything as long as they desire to continue their deliberations.

"And the Jury return to the jury box at 2:33 A.M.

"THE COURT: Who is the foreman?

"FRANK M. EDGAR: I am, Your Honor.

"THE COURT: I understand that you folks would like to go to bed and come back in the morning and deliberate the case?

"FOREMAN EDGAR: The last five ballots of the jury have produced exactly the same result. I feel that with some consideration and perhaps more conversation in the morning we may be able to resolve it.

"THE COURT: All right, sir. Let me ask you this question, and I am going to ask it very carefully. I would like to know how you stand numerically whether it be 6–6, 5–4, and nothing more, just numerically?

"FOREMAN: We stand 11–1.

"THE COURT: Eleven to one. Very well, then go with the bailiffs to your room and about tomorrow morning you can be your own judge of what time you want to get up and come down here. You will have to make arrangements for breakfast. You can talk that over and find out. All right, very well."

This question has been ruled upon by this Court on many occasions. In Calhoun v. State, Okl.Cr., 406 P.2d 701 (1965), Judge Brett. stated in the fourth syllabi:

"It is not improper for trial judge, after a jury has been deliberating for some time, to call them into court to ascertain whether there is reasonable probability of reaching a verdict and to inquire of the likelihood of them doing so. However, the Court must exercise great caution to say nothing tending to coerce an agreement, to indicate his feelings in the case, or to invade the province of the jury."

In the instant case the inquiry was made by the Court after a request of such was made by the defendant's attorney. This Court has previously frowned on "laying behind a log" tacts of defense counsel by creating error and then complaining of such on appeal. Ferrell v. State, Okl.Cr., 475 P.2d 825 (1970).

We are of the opinion that the inquiry of the jury was properly made for the purpose of determining the plausibility of reaching a verdict and that the trial court did not in any way attempt to coerce or invade the province of the jury. We, therefore, find this proposition to be without merit.

The final proposition contends that the State has wrongfully withheld evidence of a lesser included offense of manslaughter from the consideration of the jury in order to gain conviction and increase the punishment of the defendant. This contention is predicated upon the theory that there must have been evidence of a lesser offense of manslaughter because the co-defendant Foster was allowed to enter a guilty plea to manslaughter and was given a lenient sentence.

We have carefully reviewed the record which is completely devoid of any evidence showing that the district attorney wrongfully withheld evidence. The record reflects that all persons whose testimony was pertinent were called as witnesses. We observe contrary to this contention that the State presented its entire evidence pro or con. The State presented the ballistics expert in its evidence in chief, knowing that the witness would not testify positively that the slugs taken from the body were fired from the gun.

The granting of clemency to an accomplice who testifies fully and freely against his partner in crime is deeply rooted in our system of jurisprudence. This practice, although unsavorable in the eyes of many is at times the only method of presenting cases, which without the use of such testimony would permit perpetrators of crimes to be set free. We find this proposition to be without merit.

In conclusion we observe that the record is free of any error that would justify modification or reversal and further that the defendant was represented at trial and on appeal by conscientious competent counsel, and under such circumstances we are of the opinion that the Judgment and Sentence should be and the same is affirmed.

NIX and BRETT, JJ., concur.