**STATE of Iowa, Appellee,**

v.

**James Thomas GALLOWAY, Appellant.**

**No. 54427.**

Supreme Court of Iowa.

June 17, 1971.

McCracken & Carlin, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Max A. Gors, Asst. Atty. Gen., Edward N. Wehr, County Atty., for appellee.

MOORE, Chief Justice.

On January 3, 1964, Harry Shannon, Jr., was shot and killed in his grocery store in Davenport, Scott County, Iowa, by an armed robber. On March 4, 1967 defendant, James Thomas Galloway, was apprehended in Kansas City, Missouri, identified as the perpetrator of Mr. Shannon's killing and returned to Iowa. He was tried, convicted and sentenced in October, 1967 to life imprisonment for murder in violation of Code section 690.2. On appeal we reversed that conviction on the basis·an erroneous alibi instruction had been given. See State v. Galloway, Iowa, 167 N.W.2d 89.

Defendant was retried in October, 1969 and again found guilty and sentenced to life imprisonment. He has appealed and assigns ten errors. Alibi is not here involved as defendant offered no evidence on retrial.

I. Defendant first asserts the trial court erred in failing to permit a voir dire examination of Richard Shannon, one of the identification witnesses. Richard had witnessed the killing of his father. Thereafter at various times he was submitted groups of photographs out of which he identified defendant's photograph as the murderer. The distinguishing features which he had described to police officers were recognizable in the photograph.

Defendant was arrested in Kansas City, Missouri in March, 1967 where he was included in a lineup and identified by Richard as the man who had killed his father. On a separate occasion Helen Adomat, another eyewitness, identified defendant in a lineup as the murderer.

On retrial Mrs. Adomat made positive identification of defendant as the man she had seen kill Harry Shannon. No voir dire examination had been requested by defense counsel.

Immediately before Richard Shannon was to be called to testify Mr. Carlin, defense counsel at all times, requested a voir dire examination stating he believed after review of the first trial transcript Richard's identification was tainted by viewing defendant's photograph and the Kansas City lineup. Defendant's request was resisted by the county attorney on the ground defendant's counsel had been allowed a complete voir dire examination of Richard at the first trial and the transcript thereof was then in Mr. Carlin's possession. He stated also that at preliminary hearing Richard had been thoroughly cross-examined. The trial court refused the request.

■ On direct examination Richard related in detail the events of January 3, 1964, including identification of defendant, and how he had picked defendant's photograph out of a group. The record discloses the use of defendant's photograph and its receipt in evidence was well within our holding in State v. Redding, Iowa, 169 N.W. 2d 788. For a splendid article on identification of perpetrators of crime by photographs, see 56 Iowa L.R. 408.

Richard's direct examination also related the details of the Kansas City lineup and his identification of defendant. His direct and cross-examination includes no evidence of any suggestive statements or conduct by other persons on which a finding of substantial likelihood of irreparable misidentification could be made. We have considered this area of the law as it applies to in-court identification in our recent cases of State v. Essary, Iowa, 176 N.W.2d 854 and State v. Wisniewski, Iowa, 171 N.W. 2d 882. The applicable legal principles therein stated need not be repeated here. The record before us reveals no violation of them.

■ The record negatives any tainted identification of defendant by use of his photograph or the Kansas City lineup. Under the entire record before us we find it was not reversible error to refuse defendant's request for voir dire examination of the witness Richard Shannon.

II. Defendant's second assigned error is his motion for directed verdict on the ground of mistaken irreparable identification should have been sustained. This contention is untenable in view of what we have said in division I.

III. Defendant's third assigned error is the trial court erred in permitting certain redirect examination of the witness Margaret Loter. On direct examination she testified she was working in the Shannon grocery store and related her observations including seeing defendant the night of the robbery and murder.

On cross-examination defense counsel referred to parts of the transcript of Mrs. Loter's evidence given in the first trial. To each inquiry as to whether she had so testified her response was that she did not remember everything she testified to at the prior trial but would not deny making the answer as read to her from the transcript.

At the close of cross-examination the county attorney handed the prior trial transcript of testimony to Mrs. Loter. This followed:

"Q. Mrs. Loter, I would like to ask you a couple questions that Mr. Carlin asked you. See if these were asked of you and these were your answers. You saw him on January 4th of 1964. Answer, yes.

"Mr. Carlin: Your Honor, I will object to this unless it's impeachment to bring in prior inconsistent statements.

"The Court: I think he can endeavor to clear up any misunderstandings that may arise from that if he can.

"Mr. Carlin: What page, Mr. Wehr?

"Mr. Wehr: Two sixty.

"Mr. Carlin: Two sixty?

"Mr. Wehr: Yes. This is your examination.

"Q. Now, can you read, oh, say lines—well, start at—start with the last question on page—on page two fifty-nine, or two. Will you just read the questions and answers?

"Mr. Carlin: Just a minute. Your Honor, I will object to this as being improper redirect testimony, reading the transcript.

"The Court: Well, let me read it first and I will know where he is. What line, Mr. Wehr?

"Mr. Wehr: Start at the bottom of two fifty-nine. And then I guess all of two sixty. Well, maybe even the top of two fifty-nine starting with line three. This is the questions and answers.

"Mr. Carlin: Your Honor, if we are going to start reading the transcript—

"The Court: We are going to read those parts that may be material to the questions and answers that you read, Mr. Carlin. Now, you want to start where, Mr. Wehr?

"Mr. Wehr: I think on line three of page two fifty-nine?"

Mrs. Loter was then permitted to read to the jury her testimony given at the first trial within the limitation stated by the court supra.

Defendant-appellant asserts the trial court erred in admitting consistent statements to counter inconsistent statements. The record does not support such a finding. Redirect was limited to qualification or explanation of the very matters raised by cross-examination.

At pages 60, 61 of McCormick, Law of Evidence, the author says: "The reply to new matter drawn out on cross-examination is the normal function of the redirect, and examination for this purpose is a matter of right, though its extent is subject to control in the judge's discretion.

"A skillful re-examiner may often draw the sting of a lethal cross-examination. The reply on redirect may take the form of explanation, avoidance or qualification of the new substantive facts or matters of impeachment elicited by the cross-examiner."

It is the general rule that after an attempt is made to impeach a witness by proving he has made statements out of court inconsistent with his sworn testimony, it is not competent, for the purpose of sustaining him, to prove that at other times he made statements out of court consistent with his statement. But this doctrine has no application to evidence offered for the purpose of contradicting impeachment evidence. Evidence is admissible on redirect and rebuttal to show there was no inconsistency. State v. Archibald, 204 Iowa 406, 408, 215 N.W. 258, 259 and citations. People v. Baker, 23 N.Y.2d 307, 296 N.Y.S.2d 745, 244 N.E.2d 232, 240; Ryan v. Dwyer, 33 A.D.2d 878, 307 N.Y.S.2d 565, 566. See also 98 C.J.S. Witnesses § 620; 4 Jones on Evidence, 5th Ed., sections 933, 961 and 962.

In Long v. Davis, 136 Iowa 734, 736, 114 N.W. 197, 198, we say:

"A ruling upon some testimony offered by plaintiff in rebuttal is complained of. Defendant sought to impeach him, plaintiff, by showing contradictory statements to one of his, defendant's, witnesses. Upon rebuttal, over defendant's objections, plaintiff was permitted to explain this matter by showing what he did in fact say; and in this there was no error. Spaulding v. [Chicago, St. P. & K. C.] R.R., 98 Iowa, 205, 67 N.W. 227; Hale v. Philbrick, 47 Iowa, 217."

Defendant's third assigned error is without merit as is his fourth which asserts similar contentions regarding redirect examination of Richard Shannon.

IV. Defendant next argues the trial court erred in refusing to require the State prior to the second trial to produce certain lie detector tape then in the hands of George W. Lindberg of Chicago, Illinois. Prior to the first trial defendant and the State by written stipulation agreed defend-

ant would submit to a lie detector test to be given by Mr. Lindberg and further agreed his testimony regarding the test would be admitted on trial. They further stipulated Mr. Lindberg could be called as a witness by either party. As we point out in our prior opinion his qualifications were not an issue.

Every appellate court which has decided the issue has ruled against the admissibility of unstipulated polygraphic evidence. A few jurisdictions, including Iowa, have accepted stipulated polygraphic data. 20 Drake L.R. 330, 335, 340; State v. McNamara, 252 Iowa 19, 29, 104 N.W.2d 568, 573. See also 23 A.L.R.2d 1306.

In denying defendant's request that the State be required to produce the tape then in the possession of Mr. Lindberg in Chicago the trial court stated: "It appearing to the Court that the matter sought to be procured is not under the control of the State of Iowa nor the Court, and is equally available to the defendant as to the State, and for that reason the Motion is hereby denied in its entirety." We find no error in the ruling.

█ V. Prior to trial the trial court sustained the State's motion in limine and held defendant was not entitled to obtain a separate and independent opinion as to the lie detector test. Defendant contends this ruling was reversible error. We do not agree. The stipulation specifically limited testimony regarding the test to that of Mr. Lindberg whose qualification had been carefully investigated and studied. As stated in division IV, supra, polygraphic evidence is admissible only by stipulation of the parties.

VI. On retrial the testimony of Mr. Lindberg was kept well within the limitations set out in our first opinion. The record here does not support defendant's claim to the contrary.

VII. Defendant's claim the county attorney was guilty of prejudicial misconduct such as to deny him a fair trial is not borne out by the record.

We have carefully reviewed the whole record, including the trial transcript, and have considered all matters raised by defendant. We find no reversible error. The sentence is that provided by Code section 690.2. The judgment of the trial court is therefore affirmed.

Affirmed.

All Justices concur except BECKER and RAWLINGS, JJ., who dissent, and REYNOLDSON, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

The polygraph test was of crucial importance in this case. All concerned knew the State would use this evidence. To prepare for trial, defense counsel needed this tape. He particularly needed the tape if he was to use the advice (or the evidence) of an independent expert. The trial court turned this case on failure to show an independent effort to get the tape or the equal availability rationale. The State did in fact produce the evidence at trial. It was adverse to defendant. Defendant has neither subpoena power nor funds to go to Chicago to make a hostile witness produce hostile tapes. Under the circumstances defense counsel was not on par with the prosecutor. He was entitled to the tape to prepare for trial. It is no answer to say he could get it himself.

RAWLINGS, J., joins in this dissent.