[Crim. No. 30049. Second Dist., Div. Three. Dec. 28, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HALLAM SELLARS, Defendant and Appellant.

COUNSEL

Herbert F. Blanck, under appointment by the Court of Appeal, and Robert Kropp, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Donald J. Oesner, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COBEY, Acting P. J.**—Defendant, David Hallam Sellars, appeals from a judgment of conviction of assault with a deadly weapon (Pen. Code, § 245, subd. (a)). The appeal lies. (Pen. Code, § 1237, subd. 1.)

Sellars contends that the trial court erroneously admitted testimony and allowed him to be cross-examined concerning his alleged prior misconduct. (See Evid. Code, § 1101, subd. (b).) Sellars also contends that a "supplemental" instruction given to the jury after it had informed the court that it was deadlocked was improper. We agree with this latter contention[1] and in light of the circumstances under which the instruction was given we hold its giving requires reversal.

FACTS

This was the second trial of Sellars growing out of an incident occurring April 13, 1976. A mistrial was declared at the first trial when the jury reported that a verdict could not be reached.

The testimony at the second trial was in accord that a highway confrontation between Sellars and a man named Shankle culminated in the following series of events: (1) Both Sellars and Shankle stopped their cars; (2) Shankle got out of his car and began walking toward Sellars' car; (3) Sellars put his car in reverse; and (4) Sellars' car struck Shankle

---

[1]We will not discuss Sellars' first contention both because the issue of admissibility of prior misconduct is currently before the California Supreme Court (see *People* v. *Thomas* (Cal.App.) hg. granted Feb. 23, 1977 (Crim. 19836); *People* v. *Glover* (Cal.App.) hg. granted Sep. 26, 1977 (Crim. 20190); *People* v. *Wheeler* (Cal.App.) hg. granted Oct. 24, 1977 (Crim. 20233)) and because we have decided to reverse the conviction based upon Sellars' second contention.

and sideswiped Shankle's car. Conflicting evidence was presented, however, as to the interpretation that should be placed upon these events. The People presented testimony to the effect that Sellars was deliberately trying to run over Shankle. On the other hand, Sellars testified that when Shankle approached him he panicked and attempted to drive away, but that in his fear he had become disoriented and accidently shifted his car into reverse. He asserted that it was not until after he had been jarred by the collision with Shankle's car that he was able to regain control over himself and his vehicle.

The jury had a difficult time reaching a verdict as to which version of the incident was correct. Both on the second and the third day of deliberation it obtained a rereading of the testimony of certain witnesses. Finally, at 10:48 a.m. on the third day of deliberation, the jury foreman advised the court that the jury had "reached an impasse."

At this point the court inquired what the numerical division of the jury was on the last ballot. The jury foreman responded that it was 11 to 1.

Over Sellars' objection, the court then gave the jury the following instruction:

"Now, ladies and gentlemen, I am going to give you a little talk, shall we say. Now, we have been through six days of trial. I gave you one instruction which is vitally important, and I don't want anything that I say at this time to be in derogation of that. I am merely going to give you a little observation which I want you to consider.

"Now, the instruction that I gave you is this: That you are not to surrender your honest convictions because of the opinions of other jurors. You will recall it said each of you must decide the case for yourself. When you have considered it, and in your conscience—I mean in your reason and in good conscience—if you say, 'I have taken my stand and I am going to stand by it,' you should not surrender that conviction simply because the other jurors feel differently.

"However, you are under a duty and obligation to consider the opinions of the other jurors, whatever they think about it, and make a determination as to whether or not you, in good conscience, can concur in that.

"Now, when I say that, if this case is not decided by this jury, it means that later on we are going to have to conduct another trial—

".        .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"There will have to be another trial, there will be twelve more people selected to conduct that trial. They will not have any more information than you do, they will not be any smarter, any more intelligent than you are, they will have nothing better to go on than what you have, and it will be necessary for them to make a decision.

"I call this to your attention because I want you to consider very seriously, the problem of trying to arrive at a verdict. And while it may seem hopeless, we had had this situation before, and we have known of jurors to reconsider, and we have obtained decisions.

"Now, again, I will go back to what I said originally: No one should ever surrender their honest convictions. But if you can reasonably and conscientiously see merit in whichever side it may be, I urge you to do that.

"So at this time I am going to send you back to the jury room for further deliberations."

Later that same day, at 3:45 p.m., the jury informed the court that they were now unanimous in their finding that Sellars was guilty of assault with a deadly weapon. The verdict of guilty was then read into the record.

## DISCUSSION

The leading California case on the issue of supplemental instructions given to a deadlocked jury is the very recent case of *People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997]. In *Gainer* our Supreme Court held that it was error for a trial court to give an instruction in a criminal case "which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried."[2] (*Id.* at p. 852.)

---

[2]We note that *Gainer* was expressly made retroactive to cases "pending on appeal." (*Id.* at p. 853.) We note further that the potential impact of such retroactive effect on the

We do not believe that the instruction given here suffers from the first element of error. The court chose language urging the jurors to "consider the opinions of the other jurors" and to "make a determination as to whether or not you, in good conscience, can concur in that." But this instruction was given within the context of an admonition to reach an independent decision and not to surrender personal conviction simply because "other jurors feel differently." (See *People* v. *Gainer, supra,* 19 Cal.3d at pp. 841, 847-851, 856, fn. 21; cf. ABA Standards for Criminal Justice, Stds. Relating to Trial by Jury (Approved Draft 1968) Commentary to Std. 5.4 at pp. 145-147.)[3]

■ The instruction suffers, however, from the second element of error. The jury was improperly instructed that a mistrial would inevitably result in a retrial:

"Now, when I say that, if this case is not decided by this jury, it means that later on we are going to have to conduct another trial— . . .

"There will have to be another trial, there will be twelve more people selected to conduct that trial. They will not have any more information than you do, they will not be any smarter, any more intelligent than you are, they will have nothing better to go on than what you have, and it will be necessary for them to make a decision."

■ An erroneous instruction such as this is not reversible error per se. In such cases the reviewing court is to examine the "circumstances under which the charge was given to determine whether it was reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error." (*Id.* at p. 855.) ■ But

---

appeal in this case, among others, was raised in the Attorney General's unsuccessful petition for rehearing in *Gainer*. Though this determination of the partially retroactive effect of the *Gainer* decision may have been dictum, it is nevertheless binding upon us. (*People* v. *Trice* (1977) 75 Cal.App.3d 984 [143 Cal.Rptr. 730].)

[3]In *Gainer*, at page 856, footnote 21, our Supreme Court expressly approved CALJIC No. 17.40 (3d ed. 1970), which reads:

"Both the People and the defendant are entitled to the individual opinion of each juror.

"It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after a discussion of the evidence and instructions with the other jurors.

"You should not hesitate to change an opinion if you are convinced it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision."

we are further directed that *"when the statement is the central feature of instructions given to a deadlocked jury,* it is more likely to have tainted their subsequent verdict than when the panel has evinced no division and the statement merely accompanies a requested rereading of portions of the testimony or previous instructions. *In the former case, the standard of reversible error presumably would be met,* as there would be little to indicate that the heightened potential for prejudice had not been realized." (Italics added.) (*Id.,* at p. 856, fn. 20.)

█ Here the instruction that "there will have to be another trial" was the central feature of the instruction. The instruction was not merely included in a requested rereading of instructions nor did it simply accompany a requested rereading of portions of testimony. Also, the instruction was read to a jury after it indicated that it was deadlocked at 11 to 1.[4]

Finally, we note again that there had been a hung jury in the first trial and this jury was deadlocked in its third day of deliberation. Also, the verdict of guilty in this case came fairly shortly after the giving of the supplemental instruction. Under these circumstances we hold that without this instruction it is reasonably probable that a result more favorable to Sellars would have been reached. Accordingly, we will reverse Sellars' conviction.

### DISPOSITION

The judgment of conviction is reversed.

Allport, J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 22, 1978. Clark, J., was of the opinion that the petition should be granted.

---

[4]Inquiry into the numerical division of the jury after it has failed to reach a verdict has itself been deemed to have a coercive impact. (*Brasfield* v. *United States* (1926) 272 U.S. 448 [71 L.Ed. 345, 47 S.Ct. 135].) Thus it has been characterized as an "aggravating circumstance" in the evaluation of the coercive impact of a supplemental instruction. (*State* v. *Maupin* (1975) 42 Ohio St.2d 473 [71 Ohio Ops.2d 485, 330 N.E.2d 708, 717].)