STATE of Iowa, Appellee,

v.

Robert CORNELL, Appellant.

No. 60630.

Supreme Court of Iowa.

May 17, 1978.

Scalise, Scism, Gentry, Brick & Brick, and Keith E. Uhl, Des Moines, and Brown & Ramsey, Osceola, for appellant.

Richard C. Turner, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Richard J. Murphy, County Atty., for appellee.

REES, Justice.

Defendant Robert Allen Cornell was charged by county attorney's information on September 14, 1976 with the crime of murder in violation of §§ 690.1 and 690.2, The Code, 1975. Upon the entry of his plea of not guilty, he was tried to a jury, convicted, sentenced and now appeals. We affirm.

The charge in this case arose from the alleged murder of one Kenneth Crow by defendant during a motor trip from Texas to Des Moines. A half-brother of defendant, Glenn Albert Oliver, aged 14, had accompanied the two men on the trip, and

was the key witness for the State. Prior to the commencement of the trial, the State filed a motion in limine to exclude all evidence respecting Oliver's residence in a juvenile home or facility, on the basis that such fact was immaterial to any issue in the case, and would be an attempt to improperly impeach the witness Oliver. The court sustained the motion conditionally, reciting in its order, "unless for some reason not now apparent to the court it should appear that the residence of the witness, Glenn Albert Oliver, in a juvenile home or facility might be material to some investigation of the incident in question".

Oliver testified as a witness for the State that the defendant Cornell, Kenneth Crow and he were traveling from Texas to Des Moines on August 30, 1976 in a jeep, the property of defendant. They were pulling a trailer loaded with defendant's personal effects, and Crow and the defendant engaged in some argument about the trailer. Oliver testified Cornell told him he was going to have to get rid of Crow.

Oliver further testified the defendant decided to stop along the highway for the stated purpose of butchering a cow, and that Crow and the defendant got out of the jeep and walked into a wooded area along Interstate Highway # 35. Oliver testified he heard a shot and the defendant returned to the jeep by himself. These circumstances were reported to the police by Oliver some days later, which led to the eventual discovery of Crow's body in the woods.

Defendant's counsel attempted to impeach Oliver's testimony by showing prior inconsistent statements he had made to Officer Robert Pontious, and an investigator defendant's counsel had retained, one John Dolan. The testimony which the defendant's counsel sought to elicit from Pontious and Dolan involved statements allegedly made to them by Oliver, concerning how much Crow and the defendant had been drinking, when their arguments took place, who removed the gun from the jeep, when Oliver slept on the trip, the purchase of drugs in Texas, the clothing which defendant was wearing, and whose idea it was

to shoot and butcher the cow. On re-direct examination of Pontious, an agent for the Bureau of Criminal Investigation, Pontious was asked by the prosecutor if he recalled when Oliver said it was Crow's idea to shoot the cow and what was said about where this statement was made. This line of testimony was objected to by defendant's counsel as calling for hearsay and for an answer made by a witness who was not under oath in violation of defendant's Sixth Amendment right to be confronted by witnesses against him. The court overruled defendant's objection and permitted Pontious to answer. Pontious' answer was that Oliver told him the statements were made in Texas. A motion to strike the answer was overruled by the court.

The witness John Dolan, a private investigator hired by defendant's counsel, testified as to his interview with Oliver concerning certain statements Oliver had made which were both consistent and inconsistent with Oliver's direct testimony.

The jury was instructed and retired to deliberate on its verdict at 1:00 o'clock, p. m. on December 14, 1976, at the close of all the evidence and after defendant's motion for a directed verdict had been overruled. After the jury had been in actual deliberation for fifteen hours, at 3:45 p. m. on December 16, 1976, and had not reached a verdict, the defendant requested the court to declare a mistrial on the basis that the jury was unable to reach a verdict. The State countered by resisting the motion for a mistrial and requesting that the court give to the jury the *Allen* charge, or verdict-urging instruction.

The following morning, at 9:00 o'clock, a. m., December 17, 1976, the court advised counsel it intended to question the jury as to its numerical standing and then give to the jury the *Allen* charge or verdict-urging instruction which appears in the record of this case as instruction No. 28. Defendant's counsel objected to the court's making the inquiry as to the numerical division of the jury and also to the giving of the *Allen* charge on the ground that either course of conduct on the part of the court would

coerce the jury into reaching a decision and deny defendant's right to a fair trial and due process under the Fourteenth Amendment. Both objections were overruled.

At 9:30 o'clock, a. m., on December 17, 1976, the jurors were called into the courtroom and were asked by the court to disclose the jury's numerical standing, but not to mention which of the three offenses (first degree murder, second degree murder, manslaughter) the jurors were considering, or how many jurors favored conviction or acquittal. The foreman of the jury responded that the numerical division of the jury stood at seven-five, and the court then asked how long the jury had stood at that numerical division. The foreman responded the seven-five standing had prevailed since the preceding morning. Thereupon, the court read instruction No. 28 to the jury, said instruction being as follows:

"Ladies and gentlemen of the jury:

"The Court gives you the following additional instruction:

"You have now been deliberating upon this case for a considerable period of time, and the Court deems it proper to advise you further in regard to the desirability of agreement if possible.

"The case has been exhaustively and carefully tried by both sides, and has been submitted to you for decision and verdict, if possible, not for disagreement. It is the law that a unanimous verdict is required, and while this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

"This case must be decided by some jury selected in the same manner this jury was selected, and there is no reason to think a jury better qualified would ever be chosen. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them; and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion. Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so. In conferring you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy, either side of a cause. The aim ever to be kept in view is the truth as it appears from the evidence, examined in the light of the instructions of the Court.

"You will again retire to your jury room and examine your differences in a spirit of fairness and candor and try to arrive at a verdict."

Deliberations were resumed by the jury at 9:40 a. m., and about three hours later the defendant renewed his motion for mistrial since the jury had still not reached a verdict. The motion was overruled and renewed at 2:38 p. m., and again overruled. At 3:20 p. m., on December 17, 1976, the jury returned a verdict of guilty of murder in the first degree.

Defendant's motion for a new trial was overruled and defendant was sentenced to life imprisonment at the State Penitentiary. He appeals, stating the following issues for review:

(1) Trial court erred by inquiring into the numerical division of the jury after the jury had been deliberating on its verdict for a considerable period of time.

(2) The trial court erred when, after inquiring into the numerical division of the jury, it gave the jury the so-called *Allen* charge or verdict-urging instruction.

(3) Trial court erred in permitting the prosecution to question witnesses concerning statements made to them by the witness Glenn Oliver, which were consistent with his testimony over the hearsay objections lodged thereto by defendant's counsel.

(4) Trial court abused its discretion by unduly restricting the cross-examination of the witness, Glenn Oliver, denying the defendant's rights under the confrontation clause of the Sixth Amendment.

■ I. In his first issue stated for review, defendant asserts it was error for the trial court to inquire into the numerical division of the jury, as such inquiry violated his constitutional right to due process and a fair trial. In the alternative, he suggests that even if there is no constitutional prohibition against such inquiry, reversal is still required because of the coercive effect upon the jury and the inherent potential of prejudice which such an inquiry creates.

The State contends we should review the totality of the circumstances and find there was no coercive effect on the jury since approximately five hours passed from the time the inquiry was made by the court until the jury returned its verdict.

Defendant places particular reliance in support of his contention on *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). See also *Jones v. Norvell,* 472 F.2d 1185 (6 Cir.), cert. denied 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973); *United States v. Hayes,* 446 F.2d 309 (5 Cir. 1971); *Jacobs v. United States,* 279 F.2d 826 (8 Cir. 1960).

While *Brasfield* might be subject to differing interpretations, it appears to us the court's conclusion therein was based on the Supreme Court's administrative power over other federal courts, and that the prohibition enunciated therein on judicial inquiry into the numerical division of a jury does not seem to rest on any constitutional basis. State courts of some jurisdictions have been reluctant to follow the lead of the Supreme Court in *Brasfield.* Courts of some jurisdictions have held it is proper for a trial court to make inquiry into the numerical division of a jury in order to evaluate the prospects for agreement on a verdict. See *e. g., Sharplin v. State,* 330 So.2d 591, 596 (Miss. 1976); *Joyner v. State,* 484 P.2d 560 (Okl. Cr.1971); *Huffaker v. State,* 119 Ga.App. 742, 168 S.E.2d 895 (1969).

To indicate the split of authority on this question, we note other courts have followed *Brasfield.* See *State v. Aragon,* 89 N.M. 91, 547 P.2d 574 (Ct.App.), cert. denied 89 N.M. 206, 549 P.2d 284 (1976); *People v. Wilson,* 390 Mich. 689, 213 N.W.2d 193 (1973). Other jurisdictions have followed a third approach, in which the court reviews the totality of the circumstances to determine whether the trial judge committed reversible error by inquiring into the numerical division of the jury. See *e. g., Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971); *State v. Nelson,* 428 S.W.2d 518, 520 (Mo.1968); *People v. Duszkewycz,* 27 Ill.2d 257, 262, 189 N.E.2d 299, 302 (1963). We have employed a similar standard of review in determining the propriety of a trial court's giving a verdict-urging instruction to the jury. See *State v. Quitt,* 204 N.W.2d 913, 914 (Iowa 1973). We adhere to that standard to determine whether inquiry into the numerical division of the jury was reversible error.

Since approximately five hours elapsed from the time the court made its inquiry into the numerical division of the jury, and gave to the jury the verdict-urging instruction, or *Allen* charge, to the time the jury reached its verdict, we believe the total circumstances of this case do not indicate the action of the trial court in making its inquiry into the division of the jury was in any manner coercive of a guilty verdict. While we do not wish to be understood as condoning the action of the trial court in this case, as the inquiry into the numerical division of a jury is not necessary to the court's determination as to whether a verdict can be reached by the jury, we do not believe the total circumstances of this case are such that reversal is required.

■ II. The defendant claims the trial court's action in giving to the jury the verdict-urging instruction after its inquiry into the numerical division of the jury is reversible error per se or in view of the totality of the circumstances of the case.

We have heretofore refused to say that the giving of the *Allen* charge, or verdict-urging instruction, is error per se. See

*State v. Quitt,* 204 N.W.2d at 913, and citations.

After a review of the totality of the circumstances, as required by *Quitt,* we hold that since a five-hour period elapsed from the time the verdict-urging instruction was given until the verdict was reached, the instruction was not coercive and the trial court did not err in giving the jury the *Allen* charge.

III. The defendant asserts the trial court erred in permitting the State to elicit from certain witnesses testimony which showed that the witness, Glenn Oliver, had made out-of-court statements which were consistent with his testimony at the trial.

Defendant had attempted to impeach Oliver's testimony by the use of prior inconsistent statements he had made to Officer Robert Pontious and defense investigator John Dolan. Such impeachment involved questions commented upon hereinabove.

Counsel for the defendant had elicited from Pontious on cross-examination testimony to the effect that Oliver said it was Crow's idea to shoot the cow, which was inconsistent with Oliver's testimony on direct examination that the idea was the defendant's, but on re-direct examination the State asked Pontious with reference to Oliver's out-of-court statement made to Pontious that it was Crow's idea to shoot the cow whether Oliver indicated where and when Crow had made such statement. Defendant's counsel objected to such questions posed to Pontious as hearsay and in violation of the defendant's Sixth Amendment right to confront the witnesses against him. The court overruled defendant's objections and permitted Pontious to answer that Oliver had told him the statements concerning the shooting of the cow had been made in Texas.

Defendant's counsel also questioned witness John Dolan on direct examination about an interview he had had with Glenn Oliver in which Oliver made statements inconsistent with his testimony at the trial. On cross-examination of Dolan by the State, Dolan was asked whether during that interview Oliver had made certain statements which were in effect consistent with his direct testimony at trial. Such question to Dolan was objected to by defendant's counsel, based on a claimed violation of the attorney-client privilege, and as eliciting hearsay testimony in violation of the Sixth Amendment right to confront witnesses. The attorney-client privilege was invoked on the basis that Dolan had been employed as an investigator by defendant's counsel. The court overruled defendant's objections to the question so put to Dolan and permitted the State to inquire into the subjects discussed on the direct examination of Dolan concerning his interview with Oliver. Dolan then testified Oliver told him defendant went over a fence for the purpose of shooting a cow, that the defendant and Crow had discussed purchasing drugs and that the defendant had returned to the jeep alone after Oliver heard a shot.

The defendant contends that the testimony elicited by the State from the witnesses Pontious and Dolan was in the nature of prior consistent statements used to rehabilitate a witness, and as such were inadmissible hearsay.

■ We have said it is proper to use prior out-of-court statements of a witness inconsistent with his testimony in order to impeach him. Use of prior statements consistent with his testimony may be appropriate to rehabilitate an impeached witness. See *State v. Galloway,* 187 N.W.2d 725, 728 (Iowa 1971); *State v. Cordaro,* 214 Iowa 1070, 1076–1077, 241 N.W. 448, 450–451; *State v. Bell,* 206 Iowa 816, 818, 221 N.W. 521, 522. The latter doctrine renders admissible evidence offered for the purpose of contradicting impeachment evidence, and that evidence is admissible on redirect examination and in rebuttal to show that there was no such inconsistency. *State v. Galloway,* 187 N.W.2d at 728. It is clear from the record that the questioning by the prosecution of the witnesses re-established the testimony of Oliver since the interrogatories posed to Dolan put the claimed inconsistent statements of Oliver in a context with the entire conversation between Dolan

and Oliver which then was obviously consistent with Oliver's testimony at the trial. The questioning of Pontious on re-direct examination explained the apparent inconsistency raised on cross-examination since it disclosed Oliver had related to Pontious the fact that Crow made the statement in Texas concerning the shooting of the cow which did not contradict Oliver's testimony that defendant said he wanted to shoot a cow on the trip back to Iowa.

We find that the trial court committed no reversible error in allowing this testimony to come into the record.

IV. Defendant next contends the trial court abused its discretion by unduly restricting the cross-examination of Glenn Oliver, denying the defendant his rights under the confrontation clause of the Sixth Amendment. Specifically he complains that the trial court should have permitted defendant's counsel to ask Oliver whether he had ever lived in a juvenile home. The questioning in this same area had been limited by the court's ruling on a motion in limine prior to trial, and the court did not permit the defendant to pursue the line of questioning which might have elicited from Oliver the fact of his one-time residence in a juvenile home.

■ The State contends either that error was not preserved or that the trial court did not abuse its discretion in so holding. The State's contention error was not preserved is based on its claim that it was incumbent upon the defendant to offer proof that Oliver had lived in a juvenile home. We find no merit in the State's contention in this direction, since no offer of proof is necessary to preserve the issue as to whether a trial court has abused its discretion in limiting cross-examination. See *State v. Droste,* 232 N.W.2d 483, 489–490 (Iowa 1975).

■ We incline to the view the trial court did not err in refusing to permit defense counsel to pursue a line of questioning which might have brought out the fact that Glenn Oliver had lived in a juvenile home. The scope of cross-examination is a matter within the discretion of the trial

court. *State v. Sheffey,* 250 N.W.2d 51, 55 (Iowa 1977); *State v. Carney,* 236 N.W.2d 44, 46 (Iowa 1975); *State v. Monroe,* 236 N.W.2d 24, 29 (Iowa 1975).

Our review of the record convinces us the trial court acted well within the latitude of its permissible discretion in limiting the cross-examination of the witness Oliver as to whether he had ever been in a juvenile home. We also conclude there was no violation of the confrontation clause of the Sixth Amendment.

As we find no reversible error, this case is affirmed.

AFFIRMED.

All Justices concur, except McCORMICK and MASON, JJ., who concur specially.

RAWLINGS, J., dissents.

REYNOLDSON, J., takes no part.

McCORMICK, Justice (concurring specially).

I agree with the dissent that the trial court erred in making inquiry into the numerical standing of the jury and in giving the *Allen* instruction, but I concur in the result reached by the majority because I do not believe, under the entire record, this constitutes reversible error in the present case.

MASON, J., joins this special concurrence.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning or result reached in Divisions I and II of the majority opinion, I respectfully dissent.

Trial court's post-submission interrogation of the jury and giving of the so-called *Allen* charge, all over repeated timely objections, constituted prejudicial error, regardless of time, sequence, or circumstances.

I. At the outset, this statement in *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 135–136, 71 L.Ed. 345 (1926), manifest a *constitutionally* based condemnation of any post-submission interrogation as to numerical standing of the jury:

"*We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal.* Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to. reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but *in general its tendency is coercive.* It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned." (emphasis added).

Further in this vein, one basic precept of the Fifth Amendment is that due process requires an accused be accorded a *fair* trial. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). And judicial conduct which tends to coerce "minority view" jurors into acquiescence effectively prevents a fair trial by depriving an accused his Sixth Amendment right to an impartial jury. Cf. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965). *Brasfield's* characterization of post-submission interrogation was inherently coercive and its attendant reference to fair trial, suffices to place its rationale within constitutional parameters. See *Jones v. Norvell,* 472 F.2d 1185, 1186 (6th Cir. 1973); *People v. Sellars,* 76 Cal.App.3d 265, 271 n. 4, 141 Cal.Rptr. 294, 297 (1977); *Smoot v. State,* 31 Md.App. 138, 355 A.2d 495, 502–503 (1976), citing *Taylor v. State,* 17 Md.App. 41, 299 A.2d 841, 845 & n. 8 (1973); *State v. Aragon,* 89 N.M. 91, 547 P.2d 574, 580 (Ct.App.), cert. denied, 89 N.M. 206, 549 P.2d 284 (1976). This conclusion is bolstered by the Supreme Court's reversal in *Brasfield* notwithstanding absence of timely exception at trial. 272 U.S. at 450, 47 S.Ct. at 136.

But even if *Brasfield* be deemed not binding upon us as a state court it still remains an accused's fair trial right dictates we adopt its teaching. See, e. g., *People v. Wilson,* 390 Mich. 689, 213 N.W.2d 193, 195 (1973); *Kersey v. State,* 525 S.W.2d 139, 141 (Tenn.1975); Annot., 77 A.L.R.3d 769, 777–780.

Furthermore, this court cited *Brasfield* with approval in *State v. Robinette,* 216 N.W.2d 317, 318 (Iowa 1974), wherein error had not been preserved.

In brief, I find no reason to abandon that stance by purporting to examine circumstances which, as *Brasfield* aptly notes, cannot be reviewed properly by the courts.

II. Noticeably, the foregoing initial error was only compounded by trial court's subsequent *Allen* charge. *Sellars,* 76 Cal. App.3d at 271 n. 4, 141 Cal.Rptr. at 297; *Kersey,* 525 S.W.2d at 141. In support of my disagreement with the majority's *Allen* charge approval, see the dissent in *State v. Kelley,* 161 N.W.2d 123, 127–128 (Iowa 1968). See also *United States v. Jacobs,* 547 F.2d 772, 776 (2d Cir. 1976); *United States v. Fioravanti,* 412 F.2d 407, 419–420 (3d Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *Redeford v. State,* 572 P.2d 219, 220–221 (Nev.1977).

I would reverse and remand for a new trial.