# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1501
Filed April 1, 2026

———————————

**Robert Allen Cornell,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Clarke County,
The Honorable Terry Rickers, Judge.

———————————

**AFFIRMED**

———————————

Elaina Steenson, Assistant Public Defender, Wrongful Conviction Unit,
Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Joseph Ferrentino, Assistant Attorney
General, attorneys for appellee.

Jesse Linebaugh and Caroline Wadman of Faegre Drinker Biddle & Reath
LLP, Des Moines, attorneys for amicus curiae The Innocence Network.

———————————

Considered without oral argument
by Chicchelly, P.J., Buller, J., and Doyle, S.J.
Opinion by Chicchelly, P.J.

**CHICCHELLY, Presiding Judge.**

Robert Allen Cornell appeals the denial of his fourth application for postconviction relief (PCR) stemming from his 1977 conviction for the first-degree murder of Kenneth Crow. He argues he is actually innocent because of evidence that Crow was still alive after the time of the alleged murder. Upon our review, we affirm the district court's denial of Cornell's PCR application.

## BACKGROUND FACTS AND PROCEEDINGS

In August 1976, Cornell, his half-brother Glenn "Albert" Oliver, and Crow were traveling from Texas to Iowa hauling a trailer. At some point, Cornell and Crow started to argue over the trailer, which was filled with Cornell's property. After the argument, Cornell told Oliver he was going to get rid of Crow. When the trio eventually stopped along the highway, Crow and Cornell got out of the vehicle and walked to the woods. Oliver recalled hearing a gun shot, and Cornell returned to the vehicle alone. Several days later, police discovered Crow's body in the woods.

Based on this evidence, a Clarke County jury convicted Cornell of first-degree murder. Cornell was sentenced to life imprisonment without the possibility of parole. The supreme court affirmed Cornell's conviction on direct appeal. *State v. Cornell*, 266 N.W.2d 15, 21 (Iowa 1978) (en banc). Cornell then pursued his first federal habeas corpus petition, which was denied. *Cornell v. Iowa*, 628 F.2d 1044, 1048–49 (8th Cir. 1980). Then came Cornell's first PCR application, which was also denied. *Cornell v. State*, 430 N.W.2d 384, 385 (Iowa 1988). Cornell then pursued a second federal habeas corpus petition, which the district court granted after one witness in Cornell's trial recanted his testimony. *See Cornell v. Nix*, 976 F.2d 376, 380 (8th Cir. 1992) (en banc). But the Eighth Circuit reversed, finding Cornell

had procedurally defaulted on the witness recantation claim and denying Cornell's other claims. *See id.* Cornell then filed yet another PCR application in state court alleging the same claims as his federal habeas application. A panel of our court determined the application was barred. *See Cornell v. State*, 529 N.W.2d 606, 611 (Iowa Ct. App. 1994).

In September 2018, Cornell filed this PCR application. In his application, Cornell alleges he is actually innocent because of newly discovered "proof-of-life" evidence that Crow was still alive after he left Cornell's vehicle. Trial was held on Cornell's application in August 2023.

At trial, Cornell called Judy Hopper as a witness. Hopper testified she was dating Crow in 1976 and knew him for a year and a half prior to his murder. Hopper further testified that Crow called her and told her he had been in a fight and Cornell let him out of the vehicle. Hopper believed Crow was going back to Mount Ayr, Iowa. The next day, Hopper went to Crow's house where she was met with police officers who informed Hopper that Crow was dead.

The district court determined there was insufficient evidence that no reasonable fact finder could find Cornell guilty of Crow's murder. Specifically, the district court found Hopper's testimony to be uncertain and inconsistent. Accordingly, the district court denied Cornell's application for postconviction relief. Cornell now appeals.

## STANDARD OF REVIEW

We review applications for PCR based on newly discovered evidence for corrections of errors at law. *More v. State*, 880 N.W.2d 487, 498 (Iowa 2016). To the extent that Cornell's claim of actual innocence raises

3

constitutional questions, our review is de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## DISCUSSION

### I. Error Preservation

Cornell raises a newly discovered evidence claim along with his actual innocence claim in his brief. The State argues the district court did not rule on a newly discovered evidence claim. Cornell responds and points to the following sentence in the district court's order, "However, this most recent PCR application boils down to whether [Hopper's] assertion that she received a phone call from Kenny after the time of death alleged by the State is truly newly discovered evidence, and whether [Hopper's] testimony is sufficiently credibly to constitute evidence of [Cornell's] actual innocence."

But the district court expressly noted the claim it was ruling on when it wrote, "[Cornell] is claiming 'actual innocence' based on 'proof of life.'" And this is consistent with our supreme court's precedent. *See Schmidt v. State*, 909 N.W.2d 778, 798 (Iowa 2018) (holding PCR applicants may bring freestanding actual innocence claims distinct from newly discovered evidence claims). We also understand the postconviction court's reference to whether the evidence was "truly newly discovered" is consistent with our case law on the timeliness of an actual-innocence claim. *See Quinn v. State*, 954 N.W.2d 75, 77 (Iowa Ct. App. 2020). So, we find error is not preserved on a separate newly discovered evidence claim, and we only consider the actual innocence claim.

### II. Actual Innocence

Now we turn to the merits of Cornell's appeal. Cornell argues he is actually innocent of first-degree murder based on the testimony of Judy

Hopper. "For an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant . . . in light of all the evidence, including the newly discovered evidence." *Schmidt*, 909 N.W.2d at 797. "[A]n applicant bringing a freestanding claim of actual innocence is claiming he or she is factually and actually innocent, despite a fair, constitutionally compliant trial ... free of constitutional defects." *Id.*

Upon our review of the PCR record, we find Cornell has not met the high burden of showing no reasonable fact finder could convict him of Crow's murder. *See id.* While we agree with Cornell that Hopper testified to receiving a phone call from Crow while on the trip with Cornell and Oliver, we do not find her testimony establishes Cornell's actual innocence.

During the alleged call, Crow told her he had been in an argument with Oliver and had Cornell let him out of the vehicle. But in a set of letters between Cornell and Hopper, she wrote, "I need your help to remember back then" and "I will do anything to help you out." And we find Hopper's testimony was inconsistent throughout. The PCR court summarized some of these inconsistencies:

> During cross-examination, Judy struggled when pressed on details of her story. She testified that she had been dating Kenny for a year and a half, starting around the beginning of her ninth-grade year. However, if Kenny was killed at the beginning of her sophomore year, she could not have been dating him for a year and a half.

> After stating that she did not know Bob had been convicted of Kenny's murder until a couple of months before the fourth PCR trial, when she was contacted by Bob's retained investigator, she stated that she had corresponded with Bob about this case in September or October of 2022. Judy then stated that she was contacted by Bob's investigator prior to the COVID-19 pandemic.

When cross-examined about when Kenny was supposed to return from Texas, Judy vacillated on whether he was to return on a Tuesday or a Wednesday. After stating on direct examination that Kenny was supposed to be back on Tuesday, Judy changed her testimony and stated he was supposed to be back on a Wednesday.

Hopper's testimony did not clearly establish the alleged phone call occurred. And even if the phone call occurred, Hopper's inability to credibly establish the timeline of when the call occurred similarly discredits the weight of the phone call itself. On our review, we give weight to the PCR court's finding that Hopper's testimony was incredible. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). And we are not persuaded by Cornell's repeated citation to outside-the-record secondary sources in an attempt to establish facts that would undermine the postconviction court's credibility findings. *See* Iowa R. App. P. 6.801 (defining the record on appeal). Nor do we consider Cornell's citation to internet websites detailing the facts of unverified "exonerations" as a factual basis on which we can rule.

Last, we have read carefully the amicus brief filed by the Innocence Network and considered its arguments. Unfortunately, the persuasive value of that brief is undercut by its repeated reliance on outside-the-record information. First, the brief cites and summarizes an unrelated Iowa district court case, apparently to establish that an Iowa postconviction applicant has been granted relief under an actual-innocence theory. But we generally take judicial notice of other proceedings only when both parties consent, and that is not the case here.[1] *See State v. Washington*, 832 N.W.2d 650, 656 (Iowa 2013). Second, the amicus brief cites multiple internet websites in a bid to bolster the factual description of other cases beyond what other courts have

---

[1] We also note that even if the parties stipulated, we could still decline to take judicial notice. *See* Iowa R. Evid. 5.201(a)–(c); *see also State v. Washington*, 832 N.W.2d 650, 655–56 (Iowa 2013).

written. This is both improper and questionable advocacy. *Cf. id.* Although we welcome thoughtful contributions by amici, they must comply with the rules of appellate procedure, like all other briefing before this court, and they should not attempt to inject outside-the-record material into our decision-making.

## CONCLUSION

Accordingly, we find Cornell did not "meet the demanding actual-innocence standard to prove the validity of [his] actual-innocence claims." *Dewberry*, 941 N.W.2d at 5 (quoting *Schmidt*, 909 N.W.2d at 793). So, we affirm the district court's denial of Cornell's PCR application.

**AFFIRMED.**