## STANLEY TAYLOR, JR. *v.* STATE OF MARYLAND

[No. 306, September Term, 1972.]

*Decided February 1, 1973.*

42

The cause was argued before ORTH, C. J., and CARTER and GILBERT, JJ.

*R. Patrick Hayman*, with whom was *Lionel Bennett* on the brief, for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert D. Horsey, State's Attorney for Somerset County,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Stanley Taylor, Jr., was convicted of wilfully and maliciously burning a storehouse by a jury in the Circuit Court for Somerset County and sentenced to twenty years in prison. He contends the judgment should be reversed because (1) his suggestion for removal was improperly denied, (2) the court refused to ask certain questions of prospective jurors on their voir dire examination, (3) he was denied an impartial jury because of a combination of the court's refusal to remove the case and refusal to ask the jurors requested questions, and (4) the trial court improperly coerced the jury into reaching a verdict.

Inasmuch as we shall reverse the judgment on the basis of the appellant's fourth contention, we do not reach contentions one,[1] two,[2] and three.[3]

---

1. In *McLaughlin v. State,* 3 Md. App. 515, we said at page 520:
"The question of whether a non-capital criminal case should be removed to another jurisdiction is one which rests within the trial court's discretion. Maryland Constitution, Art. IV, Sec. 8; Maryland Rules 542 (1) and 738 (b). However, the trial court's decision is reviewable on appeal for a determination of whether there has been an abuse of discretion. *Seidman v. State,* 230 Md. 305, 187 A. 2d 109 (1962); *Benton v. State,* 1 Md. [App.] 647, 652, 232 A. 2d 541 (1967)."
2. In respect to the discretion of the trial court in propounding certain questions to prospective jurors on their voir dire examination, the Court of Appeals said in *Grogg v. State,* 231 Md. 530 at page 532:
"* * * It is well established that questions asked prospective jurors which are not directed to a specific ground for disqualification may be refused in the discretion of the trial court. *McGee v. State,* 219 Md. 53; *Whittemore v. State,* 151 Md. 309."
3. It is clear that the appellant's third contention is without merit unless it be established that the trial court erred in respect to both contentions one and two.

The record shows that the jury retired to deliberate at 3:07 p.m. on the same day the trial had begun. An hour and 5 minutes later they voluntarily returned to the courtroom. At that time the following colloquy took place between the judge, the jury, and the State's Attorney:

"THE COURT: Ladies and gentlemen, are you ready to return a verdict?

"THE FOREMAN: Yes, we are.

"THE COURT: You have agreed upon a verdict?

"THE FOREMAN: No. It's hung jury, sir.

"THE COURT: Well, now, Mr. Foreman, you have been out for an hour and five minutes, I think.

Now, ladies and gentlemen, do you mean that you won't if I send you back longer, that you—I am not asking you how you voted or how you stand or anything of that sort, but, Mr. Foreman, don't you think that you could reach a verdict?

"THE FOREMAN: I am afraid not.

"THE COURT: Mr. Shores [a juror], what is your opinion, sir?

"MR. SHORES: Well, it's 11 to 1 vote. I don't think 11 will agree with one.

"THE COURT: Mrs. Murphey [a juror], what is your opinion?

"MRS. MURPHEY: I don't think it will be changed.

"THE COURT: You do not?

"MRS. MURPHEY: No.

"MR. BARNES [a juror]: It's up to the 1.

"THE COURT: Mr. Barnes, I agree. It's up to the one to change.

"MR. HORSEY [State's Attorney]: Your Honor, may I interject a comment? Will you give the jury another opportunity to consider?

"THE COURT: Yes.

Go back and stay for twenty minutes. If you come back again, I may send you back for twenty more minutes."

Following this exchange, the jury returned to their jury room. Twenty minutes later they returned to the courtroom with a general verdict of guilty.

## A. THIS COURT SHOULD CONSIDER THE JUDGE'S REMARKS

The appellee asserts that the appellant's fourth contention concerning the propriety of the trial judge's remarks is not before this Court for review because no objection was made in the lower court. Md. Rule 756 g provides in substance that ordinarily no error in the court's instructions not objected to below will be considered by the appellate courts, but the Court may, upon its own motion, take cognizance of and correct any plain error in the instructions even though the error was not objected to below. Md. Rule 702 e defines "instructions" as used in Chapter 700 to include "any advisory instructions on the law and any summation of or reference to the evidence." In applying this definition the Court of Appeals in *Wolfe v. State,* 218 Md. 449, 455, considered the prejudicial remarks of a trial judge to an accused concerning his right to testify and a reference to the incriminating effect of the State's evidence, made in the presence of the jury, as constituting an instruction within the scope of Md. Rule 756 g (formerly 739 g). In *Fletcher v. State,* 8 Md. App. 153, 158-160, we interpreted the rule to include an "Allen charge" [4] given by the trial

---

4. See *Allen v. United States,* 164 U. S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896).

judge to a jury, which had failed to agree, after a period of deliberation. Applying the rationales in *Wolfe* and *Fletcher* to the instant case, we hold that the remarks of the trial judge, after the jury had disagreed, were in the nature of instructions within the scope of Md. Rule 756 g.

In *Brown v. State*, 14 Md. App. 415 (1972) this Court, speaking through Judge Powers gave a complete history of the interpretations of Md. Rule 756 g by the Court of Appeals and this Court.[5] At page 422 we said:

> "Therefore we think that as a general guide, we may say that under Rule 756 g we will take cognizance of and correct an irremediable error of commission, but not an error of omission. Of course, the error must be plain, and material to the rights of the accused, and, even then, the exercise of our discretion to correct it should be limited to those cases in which correction is necessary to serve the ends of fundamental fairness and substantial justice."

Applying *Brown* to the circumstances of the instant case, we hold that the errors committed by the trial judge in his remarks (instructions) to the jury were "irremediable errors of commission," since they were of such a nature that he could not have corrected them even if he had attempted to do so. We also hold that correction is "necessary to serve the ends of fundamental fairness and substantial justice." Therefore, this Court should consider the remarks under Rule 756 g, even though they were not objected to below.

---

5. See *Madison v. State*, 200 Md. 1, 9-10 (1952); *Brown v. State*, 203 Md. 126, 130 (1953); *Wolfe v. State, supra*; *Reynolds v. State*, 219 Md. 319, 324-325 (1959); *Giles v. State*, 229 Md. 370, 386-387 (1962); *Parker v. State*, 4 Md. App. 62, 67 (1968); *Bieber v. State*, 8 Md. App. 522, 534 (1970); *White v. State*, 8 Md. App. 51, 52 (1969).

## B. THE REMARKS CONSTITUTED REVERSIBLE ERROR

In speaking of the constitutional right of an accused to be fairly tried by an impartial jury, the Court of Appeals in *Bristow v. State* (1966), 242 Md. 283 said at page 289:

> "* * * Although the federal constitution does not demand the use of jury trials in state criminal proceedings,[6] where a jury is provided, [under Art. 21, Md. Declaration of Rights], federal due process requires that it be fair and impartial. *Beck v. Washington* [369 U. S. 541]; *Irvin v. Dowd* [366 U. S. 717]; *Darcy v. Handy* [351 U. S. 454]."

While the so-called "Allen charge"[7] was not given in the instant case, nevertheless the rationale whereby that instruction has been held coercive *vel non* is applicable to the issue of possible coercion of the jury in this case. In passing upon the issue of coercion in respect to the "Allen charge" this Court said in *Plumley v. State*, 4 Md. App. 671 at pages 682-683:

> "* * * In *Leupen* [Leupen v. State, 248 Md. 19] the Court stated, at p. 25, that it would be well for the lower court in any case to keep in mind the language found in 1 Branson's *Instructions*

---

6. *Bristow v. State, supra* was decided prior to *Duncan v. Louisiana*, 391 U. S. 145, 20 L.Ed.2d 491, 88 S. Ct. 1444 (1968). In *Duncan* the Supreme Court held that the guarantee of a trial by an impartial jury contained in the Sixth Amendment was made applicable to state criminal prosecutions by virtue of the Fourteenth Amendment.

7. In *Allen v. United States, supra*, the Supreme Court approved instructions by a trial judge to members of a jury who had disagreed that urged them to agree. The substance of the instruction pointed out that the jurors should agree if they could do so without violating their own individual conscientious convictions. They were also advised to examine their individual beliefs with a proper regard and deference to the opinions of other jurors, particularly where the opinion of a juror was in the minority with that of his fellow jurors.

*to Juries* (3rd Ed. A. Reid 1960 Replacement) and it quoted:

'The trial judge may advise an unagreed jury of the importance of their reaching a verdict, if they can do so without surrendering their conscientious convictions. But he cannot go beyond that and say anything to the prejudice of either party. There is no prescribed language that he must use in this connection. What he may with propriety say must in a large measure be left to his good judgment. But as the exclusive right to agree or not to agree rests with the jury, the judge must not by threat or entreaty attempt to coerce a verdict or exert his authority to force an agreement; * * *' "

The remarks of the court when one of the jurors commented, " [i]t's up to the 1" after the judge had been informed that the jury was divided eleven to one was patently coercive upon the minority juror. At that time the judge said, "* * * I agree. It's up to the one to change." It is a well known fact that jurors are usually responsive to any suggestion made by the presiding judge regarding their conduct as a member of the panel. When the trial judge, in the course of urging the jury to agree, remarked " [i]t's up to the one to change" without any admonition whatever that the minority juror should vote in accordance with his conscientious beliefs, he clearly exerted undue pressure and coercion upon the minority juror.

Furthermore, we think that the court's conduct and remarks soliciting the opinion of several jurors as to the probability of the jury agreeing was also improper under the circumstances. In *Brasfield v. United States,* 272 U. S. 448, 71 L. Ed. 345, 47 S. Ct. 135 (1926), the Supreme Court held that an inquiry by a trial judge as to the numerical division of a jury that had disagreed

was coercive in nature and reversible error in itself. In so holding, the Court said at pages 135-136 [47 S. Ct.]:

> "*We deem it essential to the fair and impartial conduct of the trial that the inquiry itself [trial judge inquiring how jury was divided numerically] should be regarded as ground for reversal.* Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but *in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury,* from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned." [8] (emphasis added)

In *Jenkins v. United States*, (1965), 380 U. S. 445, 13 L.Ed.2d 957, 85 S. Ct. 1059, the Supreme Court cited *Brasfield, supra* with approval for comparative purposes.

The trial judge in the instant case did not directly ask the jury the extent of their numerical division. However, in response to his inquiry of members of the panel concerning the probability of the jury agreeing, he was advised that the division was eleven to one. After receiving this information, he continued to make the same inquiry

---

8. In *Brasfield, supra* the Supreme Court was dealing with the issue of "the fair and impartial conduct of the trial," that is, with the application of the federal due process clause to the jury trial of a person accused of violating a federal law. However, the federal due process clause is also applicable to the conduct of a jury trial of a person accused of violating a state law where such jury trial is provided for by law. It is so provided for in Maryland by Art. 21 of the Declaration of Rights. See *Bristow v. State, supra.*

of other jurors. In response to the inquiry, one juror said, "I don't think 11 will agree with one." Another juror said, "It's up to the 1." Such statements from other jurors publicly declared in the presence of the minority juror had a "tendency" of "bringing to bear in some degree, serious, although not measurable, an improper influence" [9] upon the minority juror within the rationale of *Brasfield, supra.* We therefore further conclude that the inquiries by the trial judge of individual jurors were also improper in the circumstances of this case.

Considering the total conduct of the trial judge, we hold that the appellant's constitutional right to have his trial by jury conducted in a fair and impartial manner has been violated. See Anno. "Coercion of Jury", 85 A.L.R. 1436, § VI and cases there cited including *Ball v. State,* 9 Ga. App. 162, 70 S. E. 888.

Since we have determined that the jury was impermissibly coerced by the remarks of the trial judge, it is not necessary that we reach the appellant's contention that the jury was coerced because it was ordered to deliberate for a specified time.[10]

*Judgment reversed and case*
*remanded for a new trial.*

---

9. See *Brasfield v. United States, supra.*

10. There is a conflict in the decisions as to whether it is error for the trial judge to threaten to keep the jury confined for a specified period of time unless an agreement is sooner reached. See Anno. 85 A.L.R. p. 1443, § 9. See *Boyett v. United States,* 48 F. 2d 482, (5th Cir. 1931); *State v. Eatherly,* 185 Mo. 178, 83 S. W. 1081; *State v. Simon,* 126 S. C. 437, 120 S. E. 230. However, expressing an intention to confine the jury for relatively short periods of time unless a verdict be reached sooner was not considered to be coercive or improper in several cases. In *Walsh v. United States,* 371 F. 2d 135 (9th Cir.) cert. den., 388 U. S. 915, informing the jury they would be held overnight after having deliberated four hours was ruled not to be coercive. Threatening to confine the jury overnight was also held not coercive in *Character v. State,* 212 Miss. 30, 53 So. 2d 41 and *Butler v. State,* 185 Tenn. 686, 207 S.W.2d 584. See cases cited Anno. 93 A.L.R.2d p. 702, § 12[b].