Bruce E. ELLIS, Appellant,

v.

Amos E. REED, Secretary of Corrections, and The Attorney General of the State of North Carolina, Appellees.

No. 78–6175.

United States Court of Appeals, Fourth Circuit.

Submitted Nov. 14, 1978.

Decided April 25, 1979.

Roger W. Smith, Raleigh, N.C. (Robert L. McMillan, Jr., Raleigh, N.C., on brief), for appellant.

Rufus L. Edmisten, Atty. Gen. of N.C., Richard N. League, Asst. Atty. Gen., Raleigh, N.C., on brief, for appellees.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge and HOFFMAN,* Senior District Judge.

---

* Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, District Judge:

Appellant stands convicted in the North Carolina state court of embezzling $18,-799.50 from a finance company. On direct appeal to the North Carolina Court of Appeals, the court found no error in the trial. *State v. Ellis*, 33 N.C.App. 667, 236 S.E.2d 299 (1977). Discretionary review was denied by the Supreme Court of North Carolina. The district court denied appellant's petition for a writ of habeas corpus by order entered on March 21, 1978.

The issues in this case arise from questions and instructions put to the jury by the trial judge after the jury had retired to consider the case. Appellant contends that it was error for the court to inquire into the numerical division of the jury, a practice which has been prohibited in the federal courts since the decision in *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). Appellant also assigns as error the giving of a supplemental modified version of the "*Allen* charge"[1] instruction.

Appellant's trial lasted three days. Following arguments of counsel, the court instructed the jury and it retired to deliberate. Appellant alleged in his petition that after about an hour of deliberation, the jury returned to the courtroom for additional instructions. After retiring and deliberating for another hour the jury again returned to the courtroom. At this time the following colloquy occurred:

COURT: Mr. Foreman, have you reached a verdict?

JURY FOREMAN: No, Your Honor, we have not.

COURT: Will you tell me numerically what is the division; not what each of you were, but the numerical division.

JURY FOREMAN: Eleven to one.

COURT: Well, I presume, ladies and gentlemen, that you realize what a disagreement means; that the time of the Court will again have to be consumed in the trial of this action. I don't want to force you or coerce you or attempt to do so in any way to reach a verdict but it is your duty to try to reconcile your differences and to reach a verdict if it can be done without the surrender of anyone's conscientious convictions; and you heard the evidence in this case, and a mistrial will mean that another jury will have to be selected to hear this case and the evidence again; and it's long and complicated. The Court recognizes sometimes that there are reasons why jurors cannot agree, but I want to emphasize the fact that it is your duty to do whatever you can to reason this matter over as reasonable men and women and attempt to reconcile your differences if it is possible without the surrender of any conscientious convictions on the part of any member of the jury. I will let you resume your deliberations and see if you can reach a verdict.

The jury then retired, deliberated, and returned a verdict of guilty within eight minutes, according to the appellant.

Appellant did not interpose an objection to either the numerical division inquiry or the supplemental charge to the jury.

The length of time of the three periods of deliberation by the jury is not indicated in the North Carolina record on appeal. Since the court below dismissed the petition for the writ without an evidentiary hearing, we accept the alleged times as being true for the purpose of this appeal.

It is the rule of this circuit that a "calmly dispassionate balanced effort on the part of a [federal] trial judge to induce a verdict does not seem to us to invade the province of the jury." *United States v. Sawyers*, 423 F.2d 1335, 1341–42 (4th Cir. 1970). We agree with the district court that the charge given in appellant's case fits within this rule. In the brief charge that was given, the trial judge twice cautioned that it was the duty of the jurors to attempt a reconciliation of their differences, if it was possible without the surrender of any conscientious convictions on the part of any member of the jury. We find no error in the instruction and do not feel

1.  *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

that the instruction was coercive in any manner. Indeed, as to the effect of the modified version of the "*Allen* charge", the intermediate North Carolina appellate court held that it was not coercive, but did not discuss the issue of the numerical standing inquiry although that fact is mentioned in the opinion.

■ We are concerned, however, by appellant's allegation that it was error for the trial court to inquire as to the numerical division of the jury.[2] Appellant urges this court to hold that the rule announced by the Supreme Court in *Brasfield, supra,* is a rule of constitutional interpretation grounded in due process requirements, and therefore applicable to the states by reason of the Fourteenth Amendment to the United States Constitution. We disagree and hold that the *Brasfield* rule is one of judicial administration based on the supervisory powers of the Supreme Court over the federal court system. The strong language of the Court's opinion in *Brasfield* merits our careful consideration of this issue as we note that there is a sharp division of authority on the question.

In *Burton v. United States,* 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), the Supreme Court condemned the practice of inquiring of a federal jury the extent of its numerical division, even though a response indicating the vote for or against conviction was neither sought nor obtained. 196 U.S. at 307, 25 S.Ct. 243. The conviction in *Burton* was reversed on other grounds, however, and federal courts of appeals remained in substantial disagreement as to whether the rule against inquiry constituted reversible error, or whether the expres-

sions in *Burton* were hortatory only. The Supreme Court put an end to the uncertainty by holding in *Brasfield* that such inquiry of the jury constituted error *per se* :

> We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

272 U.S. at 450, 47 S.Ct. at 135–136.

The language "essential to the fair and impartial conduct of the trial" might be read to impart a rule of constitutional interpretation, although not necessarily so. We note that no provisions of the Constitution are cited in *Brasfield.* The succinct, two-page opinion of the Court in *Brasfield* should be read in conjunction with the Court's opinion in *Burton,* from which the rule evolved. In *Burton* the Court stated that "we do not think that the proper ad-

---

2. A review of the briefs submitted to the North Carolina Court of Appeals on direct appeal and to the Supreme Court of North Carolina on application for discretionary review indicates that the *Brasfield* question was not specifically raised on appeal. No reference is made to *Brasfield.* However, the facts surrounding the numerical inquiry of the jury were before the state courts in conjunction with the consideration of the propriety of the watered-down *Allen* charge. The language of the North Carolina provisions for post-conviction relief, 1C Gen. Stat.N.C. § 15A–1419, and the restrictive interpretation placed upon post-conviction relief

statutes by the North Carolina Supreme Court, *State v. White,* 274 N.C. 220, 162 S.E.2d 473, 480 (1968), make it extremely unlikely that appellant has available any avenues of relief in the state courts. We therefore decline to dismiss or remand this issue for non-exhaustion of state remedies. See: *The North Carolina Post-Conviction Hearing Act: A Procedural Snare,* 55 N.C.L.Rev. 653, et seq. Moreover, the petitioner's sentence would probably be terminated before the precise issue can be decided. While this would not moot the question, it is additional reason for us to decide the case at this time.

ministration of the law requires such knowledge or permits such a question on the part of the presiding judge." 196 U.S. at 308, 25 S.Ct. at 250. This language lends support to the view that the rule is an administrative one which is supervisory rather than constitutional.

Following the decision in *Burton*, the federal circuits split over whether noncompliance with the Court's admonition constituted reversible error, or was merely hortatory. *Brasfield* put an end to the uncertainty. Similarly, state courts are now in disagreement as to whether the rule in *Brasfield* is applicable to state trials. The district court below, in a carefully researched opinion, noted three cases where state courts have adhered to *Brasfield* ; they are *Taylor v. State*, 17 Md.App. 41, 299 A.2d 841 (1973); *People v. Wilson*, 390 Mich. 689, 213 N.W.2d 193 (1973); *Kersey v. State*, 525 S.W.2d 139 (Tenn.1975). Subsequent to the decision of the district court, the Court of Appeals of New Mexico wholeheartedly adopted *Brasfield* in *State v. Aragon*, 89 N.M. 91, 547 P.2d 574 (1976). Of the four decisions adhering to *Brasfield*, only two courts (Michigan and New Mexico) adopted *Brasfield* as a constitutional rule. The Tennessee court mentioned *Brasfield*, but then based its holding on the "inherent and the statutory supervisory power of this Court." 525 S.W.2d at 141. The Maryland opinion discussed *Brasfield* at length, but considered "the total conduct of the trial judge" in holding that the appellant's constitutional right to a fair and impartial jury trial had been violated. 299 A.2d at 845. On the other hand, several courts have specifically considered *Brasfield* to be based on the Supreme Court's administrative power over the federal courts, *State v. Cornell*, 266 N.W.2d 15, 19 (Iowa 1978); *State v. Morris*, 476 S.W.2d 485, 489 (Mo. 1971);[3] *Sharplin v. State*, 330 So.2d 591, 596 (Miss. 1976). Others have allowed inquiry of the jury in

the absence of coercion. *Joyner v. State*, 484 P.2d 560, 562 (Okl.Cr. 1971); *People v. Carter*, 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353, 356 (1968); *Huffaker v. State*, 119 Ga.App. 742, 168 S.E.2d 895, 896 (1969); *Lowe v. State*, 175 Colo. 491, 488 P.2d 559, 561 (1971).

Only two federal courts have reached the *Brasfield* problem in habeas corpus petitions from state convictions. In *Jones v. Norvell*, 472 F.2d 1185 (6th Cir. 1973), the court reversed a lower court decision and ordered entry of the writ where the state court had said "it is incumbent on you to reach a verdict." The court found that the facts of the case indicated an invasion of jury secrecy, inquiry into the numerical division of the jury, a coercive jury charge, and a speedy return of a verdict subsequent to the charge. 472 F.2d at 1186. The court held that the "totality of the circumstances" violated the appellants' rights to a fair and impartial jury trial. Thus the *Brasfield* problem was not held to require reversal *per se*. In the only other consideration of the problem, the District of Oregon held that the *Brasfield* rule was based on the supervisory powers of the Supreme Court. *Marsh v. Cupp*, 392 F.Supp. 1060, 1063 (D. Ore. 1975). On appeal the Ninth Circuit upheld the decision of the district court, but erroneously concluded that no *Brasfield* problem was presented by the facts of the case.[4] *Marsh v. Cupp*, 536 F.2d 1287, 1291, fn. 9 (9th Cir. 1976).

In *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), the Supreme Court considered a case in which the trial judge, without making inquiry as to the numerical standing, stated to a divided jury: "Now, I am not going to accept this. You have got to reach a decision in this case." The Court found reversible error in that, "in its context and under all the

---

**3.** Missouri has had a problem with the question. In *State v. Sanders*, 552 S.W.2d 39 (Mo. App. 1977), the jury had advised the court that it stood 9 to 3 *for conviction*, following which the court gave the "hammer instruction" which the court held was error. In a later case, *State v. Smith*, 556 S.W.2d 484 (Mo.App. 1977), the

court approved of the numerical division inquiry and distinguished *Sanders, supra.*

**4.** The state trial judge had made inquiry as to the numerical standing of the jury, but not whether they were for conviction or acquittal.

circumstances the judge's statement had the coercive effect attributed to it." 380 U.S. at 446, 85 S.Ct. at 1062. This "totality of the circumstances" test has been used frequently by courts which have had to consider the effect of allegedly coercive instructions or comments to the jury. We mention the *Jenkins* test because the state and federal courts which have declined to hold that the *Brasfield* rule *per se* requires reversal have instead looked to the totality of the circumstances in order to determine whether an inquiry into the numerical division of the jury may have had a coercive effect. Courts have most frequently found such coercive effect when the inquiry is accompanied by an *Allen* instruction.

During the fifty-three years since *Brasfield* was decided, the Supreme Court has not had occasion to discuss the rule's applicability to state trials. In recent years, however, the Court has considered at length the relationship between requirements of the federal Constitution and state jury trials. In *Duncan v. Louisiana*, 391 U.S. 145, 148, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court firmly held that trial by jury in criminal cases is fundamental to the American system of justice, and that the Fourteenth Amendment guarantees a right of jury trial in all state criminal cases which would come within the Sixth Amendment's guarantee were they to be tried in a federal court. The Sixth Amendment right to jury trial in federal cases had always been held to be "trial by jury as understood and applied at common law," requiring a jury of twelve persons and a unanimous verdict. *Patton v. United States*, 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854 (1930). Nevertheless, the Court held in decisions subsequent to *Duncan* that states may provide for juries of less than twelve persons, *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), and for less than unanimous verdicts, *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), without denying due process. *Duncan* and *Williams* are notable for the concurring opinions of Mr. Justice Black advocating his incorporation theory that the Fourteenth Amendment incorporated the Bill of Rights and made it applicable to the states, and for the dissenting opinions of Mr. Justice Harlan which warned that the Court was creating a constitutional straitjacket for the states and doing great harm to the federal system.

In *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the Court considered the effect of an instruction to the jury that every witness is presumed to speak the truth, in a trial in which the defendant elected not to testify. The appellant argued that such an instruction shifted from the state its burden to prove a defendant's guilt beyond a reasonable doubt. The Supreme Court held that the instruction did not offend the requirements of due process, and discussed the supervisory functions of appellate courts in a federal system:

> Within such a unitary jurisdictional framework the appellate court will, of course, require the trial court to conform to constitutional mandates, but it may likewise require it to follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution. Thus even substantial unanimity among federal courts of appeals that the instruction in question ought not to be given in United States district courts within their respective jurisdictions is not, without more, authority for declaring that the giving of the instruction makes a resulting conviction invalid under the Fourteenth Amendment. Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

414 U.S. at 146, 94 S.Ct. at 400.

Thus the Supreme Court, in *Duncan*, has required states to provide criminal defendants with the Sixth Amendment right to jury trials, but has in subsequent cases

granted the states significant leeway in matters related to the jury trial. An inquiry during deliberations as to the numerical split of a jury is in the nature of a supplemental instruction, and is most closely analogous to the situation before the Court in *Cupp v. Naughten.* We are of the opinion that the inquiry is essentially procedural in nature, absent any overt coercion upon the minority jurors. In any event, the jury knew how it was divided. Keeping in mind the admonitions of Mr. Justice Harlan in *Duncan* and *Williams,* we feel that under the principles of federalism the decision whether to allow the inquiry is best left to the supervising state court. Indeed, we have expressed the opinion that there is some value to the inquiry in a federal case when the trial judge is deciding whether to declare a mistrial or otherwise excuse the jurors for dinner. *United States v. Rogers,* 289 F.2d 433, 435 (4th Cir. 1961).[5]

We assume that the Supreme Court, in *Brasfield,* had in mind the Supreme Court's limited corrective power over state courts which, in criminal cases, is narrower than that which the Court exercises over lower federal courts. In *United States v. Mitchell,* 322 U.S. 65, 67–68, 64 S.Ct. 896, 897, 88 L.Ed. 1140 (1944), the Court said, "Our sole authority [in state court proceedings] is to ascertain whether that which a state court permitted violated the basic safeguards of the Fourteenth Amendment." And in the landmark case of *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), it is said:

> For, while the power of the Court to undo convictions in state courts is limited to the enforcement of those "fundamental principles of liberty and justice," . . which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence.

318 U.S. 340, 63 S.Ct. at 613.

■ Later, in *Rochin v. California,* 342 U.S. 165, 168, 72 S.Ct. 205, 207, 96 L.Ed. 183 (1952), Mr. Justice Frankfurter, speaking for the Court, had this to say:

> Accordingly, in reviewing a State criminal conviction under a claim of right guaranteed by the Due Process Clause of the Fourteenth Amendment, from which is derived the most far-reaching and most frequent basis of challenging State criminal justice, "we must be deeply mindful of the responsibilities of the States for the enforcement of criminal laws, and exercise with due humility our merely negative function in subjecting convictions from state courts to the very narrow scrutiny which the Due Process Clause authorizes.". . . Due process of law, "itself a historical product," . . . is not to be turned into a destructive dogma against the States in the administration of their systems of criminal justice.

For these reasons we are convinced that *Brasfield* was intended to formulate a policy for the federal courts to follow, and is not applicable *per se* to the state courts. Likewise, viewed within the totality of the circumstances, *United States v. Jenkins, supra,* neither the inquiry as to the numerical division of the jury nor the supplemental modest charge had the coercive effect attributed to them by the appellant. We look with particular favor upon the two admonitions in the modified *Allen* charge that no juror surrender any conscientious convictions.

The order of the district court denying the writ of habeas corpus is affirmed.

AFFIRMED.

---

5. The *Rogers* case, in an opinion by Judge Haynsworth, involved an inquiry as to the substantial majority-minority standing of the jury, followed by the *Allen* charge which was incomplete and one-sided, thus requiring a new trial.

However, it is clear that the *Rogers* court applied the totality of circumstances rule and did not rest its decision solely on *Brasfield.* Indeed, the numerical division inquiry is minimized in *Rogers.*

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

There is no dispute between the majority and me that *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), does not invalidate the state conviction in the instant case unless *Brasfield* was decided on constitutional grounds. Although the question is certainly not free from doubt, I, unlike the majority, think that application of the authority which controls our decision leads to the conclusion that the *Brasfield* rule is a rule of constitutional interpretation of the due process clause of the Fifth Amendment and it is therefore applicable to the states under the Fourteenth Amendment. I would therefore invalidate the conviction and direct that the writ issue unless North Carolina concludes to try Ellis anew.

## I.

As the majority points out, *Brasfield* resolved the conflicting decisions which had been generated by the dictum in *Burton v. United States*, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905), as to whether an inquiry into the numerical division of an undischarged jury constituted reversible error. It held that, in the event of conviction, such an inquiry was reversible error, and it is clear that it held that such an inquiry *alone* constituted reversible error. In addition to the inquiry made during the jury's second day of deliberations, the trial court had given a form of *Allen* charge, *see Brasfield v. United States*, 8 F.2d 472 (9 Cir. 1925), but this fact was not mentioned by the Supreme Court, although argued to it; *see* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. After deciding that the inquiry required reversal, the Court added "[i]t is unnecessary to consider other assignments of error directed to the instructions given the jury at the time of its recall." 272 U.S. at 450, 47 S.Ct. at 136.

Admittedly, the Supreme Court did not specify whether its decision was based upon its view of the requirements of the Fifth Amendment or was merely an exercise of its supervisory power over inferior federal courts. All that it said was:

> We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

272 U.S. at 450, 47 S.Ct. at 135–136.

Since the Supreme Court did not identify the basis of its decision (constitutional or supervisory), one must look to the language it employed to determine that basis. If the inquiry it condemned "is coercive" and it is "essential to the fair and impartial conduct of the trial" that the inquiry alone be regarded as ground for reversal, I can only conclude that *Brasfield* rests on constitutional grounds. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), held that the right to a jury trial in a criminal case is "fundamental to the American scheme of justice," so that the Fourteenth Amendment guarantees that the right attaches in all criminal cases in state courts where, were the case tried in a federal court, the Sixth Amendment guarantee to a jury trial would apply. In reaching that conclusion, the Court spoke to the instances in which rights guaranteed, *inter alia*, by the Fifth Amendment are also protected against abridgment by the states. Its language bears repeating:

> The test for determining whether a right extended by the Fifth and Sixth Amendments with respect to federal

criminal proceedings is also protected against state action by the Fourteenth Amendment has been phrased in a variety of ways in the opinions of this Court. The question has been asked whether a right is among those " 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.' " *Powell v. Alabama*, 287 U.S. 45, 67 [53 S.Ct. 55, 77 L.Ed. 158] (1932); whether it is "basic in our system of jurisprudence," *In re Oliver*, 333 U.S. 257, 273 [68 S.Ct. 499, 92 L.Ed. 682] (1948); and whether it is "a fundamental right, essential to a fair trial," *Gideon v. Wainwright*, 372 U.S. 335, 343–344 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963); *Malloy v. Hogan*, 378 U.S. 1, 6 [84 S.Ct. 1489, 12 L.Ed.2d 653] (1964); *Pointer v. Texas*, 380 U.S. 400, 403 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). The claim before us is that the right to trial by jury guaranteed by the Sixth Amendment meets these tests. . . . Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee. [Footnotes eliminated.]

391 U.S. at 148–49, 88 S.Ct. at 1447.

Certainly *Duncan* holds that the right to trial by jury in criminal cases is a fundamental right.* Thus, I think it follows that a practice condemned because it is "coercive" and destroys the "fair and impartial conduct of the trial" is condemned on constitutional grounds. Preservation of the purity of the jury's deliberations is furtherance of a constitutional objective, not merely the exercise of supervisory power for a desirable but non-constitutional purpose.

---

* The majority cites two subsequent cases in which the Supreme Court has permitted states to deviate, within certain limits, from federal practice with regard to the number of jurors and the requirement of unanimous verdicts. *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Johnson v. Louisiana,*

406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). I think these cases inapposite. They were concerned solely with formal aspects of the jury. I do not read them to suggest that a judge may, consistently with the Fourteenth Amendment, conduct an inquiry of the jury which has a "coercive" effect.