**Jay Melvin QUINERLY, Petitioner,**

v.

**Lawrence E. CHERRY, et al.,
Respondents.**

**No. 81–389–HC.**

United States District Court,
E. D. North Carolina,
Raleigh Division.

Dec. 14, 1981.

Jay Melvin Quinerly, pro se.

Richard N. League, Sp. Deputy Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for respondents.

### ORDER

BRITT, District Judge.

Petitioner, Jay Melvin Quinerly, a prisoner of the State of North Carolina, was convicted by a jury in the Superior Court for Craven County of armed robbery. He is currently serving a fifteen-year prison sentence and brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976). Three claims for relief are presented. First, the conviction resulted from a mistaken identification in violation of the sixth and fourteenth amendments.[1] Second, insufficient evidence existed upon which guilt could be based. Third, the trial judge overruled petitioner's sixteen motions, thereby denying him a fair trial.

The case is before the court on respondents' motion to dismiss. Since disposition of this matter involves procedural, as well as substantive, considerations, the court will group the claims accordingly to facilitate its discussion.

Petitioner has apparently presented the second and third claims to the North Carolina courts on direct appeal.[2] *See State v. Quinerly*, 50 N.C.App. 563, 274 S.E.2d 285, *disc. review denied*, 302 N.C. 632, 280 S.E.2d 447 (1981). The court will reach the merits of these two claims. Petitioner's first claim, however, must be considered on procedural grounds.

---

1. Petitioner cites the fourth and eighth amendments as supporting a constitutional protection against mistaken identification. These provisions add no substance to his claim.

2. Petitioner's state court brief compounded the difficulty in ascertaining the precise issues raised on appeal. This court's review of the record discloses no contention raised on direct appeal which can be construed to raise the mistaken identification claim based on the sixth and fourteenth amendments.

I. *Claim Barred by Failure to Present on Direct Appeal*

■ Petitioner failed to present his claim of mistaken identification to the North Carolina courts on direct appeal. *See State v. Quinerly*, 50 N.C.App. 563, 274 S.E.2d 285, *disc. review denied*, 302 N.C. 632, 280 S.E.2d 447 (1981). This failure bars consideration of this claim in the federal system. A consideration of two concepts—exhaustion of remedies[3] and procedural default[4]—sheds additional light on the rationale of this position.

■ When considered apart from procedural default, exhaustion requires only that a petitioner seeking habeas relief initially raise his claim in the state courts. 28 U.S.C. § 2254(b) & (c) (1976). The principle of comity suggests that federal courts should stay their hand until an issue has been determined in the normal course of state proceedings. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Inquiry focuses on the viability of this procedure for petitioner.

Although petitioner has no further avenue on direct appeal, he might proceed to a collateral attack—post-conviction relief—under the appropriate North Carolina statute. *See* N.C.Gen.Stat. § 15A–1411 *et seq.* (1978). One of the three grounds for denying a motion for appropriate relief is that "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue ... but failed to do so." *Id.* § 15A–1419(a)(3). The official commen-

tary explaining this provision states that "once a matter has been litigated or there has been an opportunity to litigate a matter, there will not be a right to seek relief by additional motions at a later date." *Id.* Given the unlikely character of state relief,[5] dismissal on grounds of non-exhaustion is inappropriate. *Ellis v. Reed*, 596 F.2d 1195, 1197 n.2 (4th Cir.), *cert. denied*, 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1979).

Consideration of the exhaustion requirement does not, however, end the inquiry. By failing to raise the mistaken identification claim as a constitutional violation, he has forfeited his right to litigate the issue. Under the restrictive view of *Wainwright* espoused by the Fourth Circuit, *Cole v. Stevenson*, 620 F.2d 1055 (4th Cir.) (en banc), *cert. denied*, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), this procedural default bars petitioner from now asserting this claim in a habeas corpus proceeding.

The United States Supreme Court limited the availability of habeas relief in holding that "contentions of federal law which were *not* resolved on the merits in the state proceedings due to [petitioner's] failure to raise them there as required by state procedure" precludes their review in a habeas petition. *Wainwright*, 433 U.S. at 88, 97 S.Ct. at 2507. Failing to follow state procedure produces an independent state ground precluding federal review absent a showing of cause and prejudice by the petitioner. *Id.* The Fourth Circuit developed an even broader interpretation as reflected in *Cole*. There, the habeas petitioner had been denied state post-conviction relief because he

---

**3.** Exhaustion of remedies in the context of a habeas corpus proceeding requires a petitioner first to present his claim to the state courts. Although the state may waive exhaustion if the claim is patently frivolous, *Jenkins v. Fitzberger*, 440 F.2d 1188 (4th Cir. 1971), this court declines to extend the rule so far as to allow a waiver when the asserted error facially raises a constitutional claim. *See Strader v. Allsbrook*, 656 F.2d 67, 68 (4th Cir. 1981) (declining to consider state's inconclusive statement on exhaustion as a waiver).

**4.** Procedural default encompasses more than *deliberate bypass. See Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837

(1963). Often procedural default is used synonymously with waiver and forfeiture in the context of an adequate state procedural ground to bar federal habeas corpus relief.

**5.** Speculation varies as to the effectiveness of the post-conviction relief act, based on a showing of good cause. *See Vester v. Stephenson*, 465 F.Supp. 868, 869–70 (E.D.N.C.1978) (stating that previously unreviewable errors may now be cognizable). The absence of North Carolina cases construing section 15A–1419(b) causes concern as to the actual vitality of this provision as an avenue to pursue collaterally claims not raised on appeal.

failed to present his federal constitutional claim on direct appeal. This omission on direct appeal "barred [him] from presenting the question to the North Carolina courts" which, in turn, barred his "federal habeas corpus relief." *Cole*, 620 F.2d at 1058–59, 1063. *See Eichman v. Dodson*, No. 81–6804 (4th Cir. Oct. 15, 1981) (recognizing that under North Carolina rules, failure to present claim on appeal precludes federal review).

■ *Cole* stands for the proposition that any procedural error by petitioner which creates an independent state ground to bar state collateral review likewise bars federal review. *Id.* at 1059. Since the North Carolina post-conviction statute authorizes the denial of relief when the petitioner failed, on previous appeal, to raise the issue, N.C. Gen.Stat. § 15A–1419(a)(3) (and commentary therein), the interpretation of *Wainwright* in *Cole* designs a hopeless dilemma, insuring that such claims will never be heard without a demonstration of cause and prejudice.

■ The precise issue raised on this record differs from *Wainwright* and *Cole* in that petitioner herein never sought state collateral review. Therefore, the state never faced the issue of procedural default. *Contra Wainwright*, 433 U.S. at 75, 97 S.Ct. at 2500; *Cole*, 620 F.2d at 1057. Although courts have addressed related questions, no decision has considered this narrow question of procedural default through failure to raise the constitutional claim on direct appeal.

When "neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *County Court of Ulster County v.*

*Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). This rule evolved when one party sought to invoke a procedural bar to the court's consideration of a specific claim which had been presented to and considered by various state and federal courts. *Id.* at 147–48, 99 S.Ct. at 2219–2220. The court determined that federal tribunals could reach the merits, despite a procedural error, so long as their state counterparts had done so.

While a cursory reading of *Ulster County* would permit a court to reach the merits where, as in the case at bar, no state court found procedural default, that position cannot weather closer scrutiny of that decision. Two factors lead to this conclusion. First, the *Ulster County* holding is connected inexorably with two factual aspects of the lower courts' decisions. The claim addressed by the Court, after it found no state procedural bar, *had been addressed* on the merits by five other tribunals. None of the five found a procedural deficiency. *Id.* In fact, the trial court ruled on the merits in denying a motion to set aside the verdict and, thereby, "implicitly decided that there was no procedural default." *Id.* at 152–53 & n.11, 99 S.Ct. at 2222 & n.11 (noting the New York standard that such a ruling by the trial court is permissible only when the issue is preserved for appeal). *Ulster County* is distinct from this case since there has been no determination here, either implicit or otherwise by the state courts, that no procedural default occurred.[6] This situation involves the failure to raise the issue on direct appeal in the state court system. This failure is *itself* the procedural default.

The second factor taking this case outside the scope of *Ulster County* is the difference in the procedural rules promulgated by the New York and North Carolina legislatures.

---

**6.** The Fourth Circuit has followed the *Ulster County* analysis. *See Baker v. Muncy*, 619 F.2d 327 (4th Cir. 1980). In *Baker*, like *Ulster County*, the court did not focus on the precise issue involved in the instant situation. Three particular factors amplify on the distinctions in *Baker*. First, the state trial court granted leave to assert the belated challenge. *Id.* at 329. Second, the procedural default in *Baker* was

the failure to object at trial. Virginia procedure allowed subsequent consideration of the claim, despite the default, if the court consented. *Id.* n.4. Finally, the Virginia Supreme Court ruled on the merits on direct appeal after the default, thereby curing it and preserving the question for collateral review. *Id. See Baker v. Commonwealth*, 218 Va. 193, 237 S.E.2d 88 (1977).

The New York contemporaneous-objection rule provides that the objection may be made "at any subsequent time when the court had an opportunity of effectively changing the same," N.Y.Crim.Proc. Law § 470.05(2) (McKinney 1971), and that the appellate courts may "consider and determine any question of law ... involving error or defect in the criminal court proceedings which may have affected the appellant" even if not objected to previously. *Id.* § 470.15(1). *See Ulster County,* 442 U.S. at 150 n.8, 99 S.Ct. at 2221 n.8 (and cases cited therein). The North Carolina rule, which bars consideration of petitioner's claim, on the other hand, closes the door to collateral attack when an issue, available on direct appeal, is not raised. *See* N.C.Gen. Stat. § 15A–1419(a)(3). Therein lies the dispositive distinction. Unlike its New York counterpart, the North Carolina legislature has addressed the situation of a petitioner's failure to raise his claim on direct appeal. It determined that the claim could not, in normal circumstances, be raised in a collateral proceeding. Since the state legislature has indicated that a constitutional claim is barred by a state procedural rule, *see Ulster County,* 442 U.S. at 154, 99 S.Ct. at 2223, petitioner's failure to raise his initial claim on direct appeal is fatal to its assertion in a habeas corpus proceeding.

Having found procedural default, the final consideration is, therefore, whether petitioner has demonstrated cause and prejudice under *Wainwright.* Careful and thorough scrutiny of the record discloses no reason for his failure to raise this issue on appeal. This court notes, in addition, that *Cole* has set an exceedingly high standard for finding cause. There the court declined to find cause even when the issue which the petitioner needed to have raised was contrary to a direct holding of the United States Supreme Court.[7] Under that standard, petitioner in the instant case would

certainly be required to pursue his constitutional claim to the trial court despite the prior contrary determinations of the North Carolina appellate courts. *Contra Isaac v. Engle,* 646 F.2d 1129, 1133 (6th Cir. 1980) (en banc), *cert. granted,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). Accordingly, this court finds no adequate cause for petitioner's procedural default, making it unnecessary to reach the question of prejudice. *Cole,* 620 F.2d at 1062. *See Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1975). Accordingly, the initial ground for relief—mistaken identification—is dismissed.

## II. *Claims Presented to State Courts*

Petitioner alleges in his second claim that there was insufficient evidence upon which a conviction could be based. To sustain a criminal conviction, under the due process clause of the fourteenth amendment, the state must prove every fact necessary to constitute the charge beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The federal habeas corpus court is duty-bound to examine the record and determine "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Petitioner's conviction hinged on circumstantial evidence. The testimony indicated that an armed black man, wearing a navy blue sweatshirt, brown pants, and tennis shoes, approached two people who were leaving after closing the store. The armed man said, "This is a stickup." The store manager, whose wife was also armed, shot at the black man. Later that night, police

7. During Cole's trial and direct appeal, it was permissible for the jury to be instructed that the burden of proving self-defense was on the defendant. Consequently, Cole did not object to such an instruction and did not challenge it on appeal. Subsequently, the court reversed the position on the burden of proof. *See Mulla-*ney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Cole then sought to challenge the instructions given at his trial. *See Cole v. Stevenson,* 620 F.2d 1055 (4th Cir.), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980).

found petitioner in his aunt's home. Since he had apparently been shot, the officer took him to the hospital. Petitioner was wearing brown pants and tennis shoes. The police found a navy blue sweatshirt, with a hole in it, near petitioner. Dr. Richard Morgan, who examined petitioner, indicated that he suffered from two gunshot wounds. Record at 8–17.

North Carolina law proscribes "the use or threatened use of firearms whereby a person's life is endangered or threatened, by one who unlawfully takes or attempts to take personal property . . . from another or from any place of business . . . where there is a person or persons in attendance. . . ." N.C.Gen.Stat. § 14–87 (1979 Cumm. Supp.). The facts summarized above provide an amply sufficient basis from which the trier of fact, through resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts, reasonably could have found all elements of attempted armed robbery. *Id.* This court, in reviewing a habeas petitioner's claim of insufficient evidence, need not satisfy *itself* of guilt beyond a reasonable doubt. Further, this court merely ascertains if *any* rational trier of fact could have convicted petitioner. Since this court is satisfied that such is the case, petitioner's claim of insufficient evidence is dismissed.

Finally, petitioner asserts the trial judge denied him a fair trial by overruling or denying sixteen motions. These allegations concern the admissibility of evidence, which are matters of state law and procedure absent some specific constitutional violations. *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.), *cert. denied*, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960). Only two of the trial motions may raise a constitutional violation.

The motion to dismiss goes to the sufficiency of the evidence. For the reasons discussed above, this claim is without merit.

The other motion which might rise to constitutional magnitude involves petitioner's effort to obtain a mistrial. The state's witness, Barbara Hale, who had previously admitted an inability to identify the alleged assailant, testified that petitioner was the armed black man. Record at 9–10. Although the trial judge denied the motion for a mistrial, he sustained the objection, granted the motion to strike the identification, and instructed the jury to disregard the statement. Record at 10. Absent a showing of a gross abuse of discretion, the North Carolina appellate courts do not review motions for mistrial in noncapital cases. *State v. Daye*, 281 N.C. 592, 189 S.E.2d 481 (1972). In light of the curative instructions given in this case, this court finds no constitutional violation arising from the denial of a mistrial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). The third claim is without merit.

Respondents' motion to dismiss is granted.

SO ORDERED.